NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1509
_____

UNITED STATES OF AMERICA

v.

TERRENCE BYRD,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-14-cr-00321-001)
District Judge:  Honorable William W. Caldwell
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2016

Before:  FISHER*, KRAUSE and MELLOY**, *Circuit Judges*.

(Filed: February 10, 2017)
_____

OPINION***
_____

_____

        * Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit,
assumed senior status on February 1, 2017.
        ** Honorable Michael J. Melloy, Senior Circuit Judge, United States Court of
Appeals for the Eighth Circuit, sitting by designation.
        *** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

MELLOY, *Circuit Judge*.

Terrence Byrd entered a conditional guilty plea to charges of possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possessing body armor as a prohibited person in violation of 18 U.S.C. § 931(a)(1). He reserved the right to appeal several suppression rulings. He now appeals, arguing: (1) the initial traffic stop was pre-textual and the District Court clearly erred in accepting the officer's testimony describing a traffic violation; (2) officers impermissibly extended the stop; and (3) the District Court erred by holding Byrd lacked standing to challenge the vehicle search. We affirm the judgment of the District Court.

I.

Byrd was driving a rental car on a four-lane divided highway near Harrisburg, Pennsylvania. A state police officer parked in the median recognized Byrd's car as a rental and noticed the driver's seat was reclined to an unusual degree such that the driver was not clearly visible. The officer followed Byrd and eventually pulled Byrd over. The officer claimed he observed Byrd violate a state law requiring drivers to limit use of the left-hand lane to passing maneuvers. 75 Pa. Con. Stat. § 3313(d)(1)(i)–(ii).[1] According

---

[1] The code section at issue provides:

    (d) Driving in right lane.—

to the officer, Byrd passed two trucks with room to move into the right lane between the trucks, but he failed to do so, remaining instead in the left lane for the extended passing procedure.

When the officer approached Byrd's stopped car and asked for Byrd's license and the rental agreement, Byrd appeared nervous and conspicuously avoided opening a center console even though Byrd had difficulty locating the requested documents. Eventually, Byrd produced an interim New York driver's license that did not include a photo. Byrd also produced the rental agreement. The rental agreement did not list Byrd as the renter or as a permissive driver.

The officer recognized the vehicles were stopped at an unsafe location and asked Byrd to move his car. Byrd complied. When the officer checked Byrd's license number, date of birth, and name, the computer returned the name James Carter. A second officer then arrived, and the officers continued to attempt to sort out the identification information. In doing so, they discovered an outstanding New Jersey warrant that indicated New Jersey did not request other jurisdictions to arrest Byrd for extradition.

> (1) Except as provided in paragraph (2) and unless otherwise posted, upon all limited access highways having two or more lanes for traffic moving in the same direction, all vehicles shall be driven in the right-hand lanes when available for traffic except when any of the following conditions exist:
> (i) When overtaking and passing another vehicle proceeding in the same direction.
> (ii) When traveling at a speed greater than the traffic flow.

75 Pa. Cons. Stat. § 3313(d)(1)(i)–(ii).

The officers determined James Carter was an alias, and also discovered Byrd's criminal history included drug, weapon, and assault charges. The officers requested their dispatching center to contact New Jersey officials to confirm New Jersey did not wish Pennsylvania to arrest Byrd for extradition. When attempting to clarify Byrd's identity, aliases, and criminal history, the officers experienced connection difficulties with their computer.

The officers then returned to Byrd's vehicle, asked him to exit the car, and asked him about the warrant and his alias. They also asked if he had anything illegal in the car. Byrd appeared nervous and said he had a "blunt" in the vehicle. The officers then asked Byrd for permission to search the vehicle, but stated they did not need his consent because he was not listed on the rental agreement. The officers assert that Byrd gave his consent. They subsequently found heroin and body armor in the trunk of the car and arrested Byrd.

In the District Court, Byrd moved to suppress the evidence resulting from the stop and the search, challenging the initial stop, the extension of the stop, and the search. Evidence submitted at a hearing included a dash-cam video and audio recording that began while the first officer was following Byrd's car. The video included thirty seconds prior to the officer's activation of his lights and extended through the entire stop. Audio captured discussions between the two officers attempting to identify Byrd, determining whether to act upon the New Jersey warrant, and determining whether a search could be

4

justified. The video and audio, together, illustrate the timing of the various tasks involved with the stop. For example, Byrd stopped his car at the second location as per the officer's request approximately nine minutes into the video. And, the officers returned to Byrd's car and asked him to exit the car approximately thirty-nine minutes into the video. At the hearing, the first officer testified it was standard practice to check with out-of-state officials to confirm whether they want the Pennsylvania officers to make an arrest even if a warrant indicates no out-of-state arrest is requested.

The District Court determined that Byrd, as the sole occupant of a rented car, had no expectation of privacy because he was not listed on the rental agreement. The District Court also found the first officer credible and accepted the officer's characterization of Byrd's passing maneuver as sufficient to justify the initial stop. Finally, the District Court held the officers developed additional reasonable suspicion of other criminal activity during the stop and all of the officers' inquiries were related to the initial stop or the newly developed suspicion.

## II.

We review de novo the legal question of whether a search or seizure is reasonable under the Fourth Amendment. *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). We review for clear error the District Court's underlying factual determinations. *Id.* at 395.

The Fourth Amendment permits a traffic stop based on reasonable suspicion that a traffic violation has occurred regardless of the officer's subjective motivations for making the stop. *Id.* at 397 ("[T]he . . . reasonable suspicion standard applies to routine traffic stops."); *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("[T]he Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."). Byrd argues it was clear error for the District Court to accept the officer's testimony that Byrd violated the left-lane statute. To support his argument, Byrd characterizes the dash-cam video as disproving the officer's assertion that Byrd had sufficient time and room to return to the right lane after passing the first truck and before passing the second truck. Byrd also attacks the officer's interpretation of the Pennsylvania statute, arguing that forcing drivers to repeatedly change lanes will lead to "highway chaos."

We reject Byrd's argument. The video shows Byrd in the left lane approaching and passing the second truck, but it does not show how long Byrd was in that lane or how much distance or space existed between trucks. Because the video does not disprove the officer's assertion, we find no basis to disturb the District Court's factual determination. Further, we reject Byrd's policy-based statutory-interpretation argument. The officer was required to possess reasonable suspicion of a traffic violation, not an understanding of the law akin to that of a seasoned jurist. *See Delfin-Colina*, 464 F.3d at 399. And, although

6

the traffic violation at issue seemingly was minor, a stop based on the perceived violation passes constitutional muster.

Regarding the duration of the stop, officers conducting a traffic stop must act with reasonable diligence in carrying out permissible tasks related to the purpose for the stop. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) ("it [is] appropriate to examine whether the police diligently pursued [the] investigation" (alterations in original) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985))). Confirming the identity of the driver of a rental vehicle, sorting out aliases, and asking a driver to move to a more safe location are all permissible tasks. *See, e.g.*, *id.* at 1615 ("[A]n officer's mission includes ordinary inquiries incident to [the traffic] stop. . . . [S]uch inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (citation omitted)). An officer does not lack diligence merely because these tasks are slightly delayed by computer issues or because a driver's use of an alias and lack of photo identification complicate the identification process. Here, the several explanations set forth by the District Court are well supported and demonstrate that the officers acted with reasonable diligence in conducting the stop.

Further, "[o]nce a valid traffic stop is initiated, 'an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further

7

investigation.'" *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)). The first officer's observation of Byrd's nervous avoidance of the center console coupled with Byrd's non-photographic identification, his use of an alias, and the absence of his name on the rental agreement gave rise to additional suspicion of other criminal activity. Moreover, we have little trouble concluding that, upon discovering a valid outstanding warrant from another state, an officer may extend a stop to inquire as to whether that other state wants the driver arrested for extradition. *Cf. Utah v. Strieff*, 136 S. Ct. 2056, 2061–62 (2016) (noting that the discovery of a valid, outstanding warrant is an intervening development that breaks the causal chain between an illegal stop and the subsequent discovery of incriminating evidence). While the duration of the stop in this case may have been long, it was not constitutionally unreasonable.

Finally, Byrd argues he did not consent to the vehicle search. A circuit split exists as to whether the sole occupant of a rental vehicle has a Fourth Amendment expectation of privacy when that occupant is not named in the rental agreement. *See United States v. Kennedy*, 638 F.3d 159, 165–67 (3d Cir. 2011) (collecting cases). The Third Circuit has spoken as to this issue, however, and determined such a person has no expectation of privacy and therefore no standing to challenge a search of the vehicle. *See id.* at 167–68 ("We therefore hold that society generally does not share or recognize an expectation of privacy for those who have gained possession and control over a rental vehicle they have

8

borrowed without the permission of the rental company.")  As such, we need not address Byrd's arguments concerning his lack of consent for the search.

We will affirm the judgment of the District Court.