(Slip Opinion)          OCTOBER TERM, 2017                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BYRD *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 16–1371.  Argued January 9, 2018—Decided May 14, 2018

Latasha Reed rented a car in New Jersey while petitioner Terrence Byrd waited outside the rental facility.  Her signed agreement warned that permitting an unauthorized driver to drive the car would violate the agreement.  Reed listed no additional drivers on the form, but she gave the keys to Byrd upon leaving the building.  He stored personal belongings in the rental car's trunk and then left alone for Pittsburgh, Pennsylvania.  After stopping Byrd for a traffic infraction, Pennsylvania State Troopers learned that the car was rented, that Byrd was not listed as an authorized driver, and that Byrd had prior drug and weapons convictions.  Byrd also stated he had a marijuana cigarette in the car.  The troopers proceeded to search the car, discovering body armor and 49 bricks of heroin in the trunk.  The evidence was turned over to federal authorities, who charged Byrd with federal drug and other crimes.  The District Court denied Byrd's motion to suppress the evidence as the fruit of an unlawful search, and the Third Circuit affirmed.  Both courts concluded that, because Byrd was not listed on the rental agreement, he lacked a reasonable expectation of privacy in the car.

*Held:*

1. The mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy. Pp. 6–13.

    (a) Reference to property concepts is instructive in "determining the presence or absence of the privacy interests protected by [the Fourth] Amendment."  *Rakas* v. *Illinois*, 439 U. S. 128, 144, n. 12. Pp. 6–7.

    (b) While a person need not always have a recognized common-law property interest in the place searched to be able to claim a rea-

sonable expectation of privacy in it, see, *e.g., Jones* v. *United States*, 362 U. S. 257, 259, legitimate presence on the premises, standing alone, is insufficient because it "creates too broad a gauge for measurement of Fourth Amendment rights," *Rakas*, 439 U. S., at 142. The Court has not set forth a single metric or exhaustive list of relevant considerations, but "[l]egitimation of expectations of privacy must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.,* at 144, n. 12. These concepts may be linked. "One of the main rights attaching to property is the right to exclude others," and "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Ibid.* This general property-based concept guides resolution of the instant case. Pp. 8–9.

(c) The Government's contention that drivers who are not listed on rental agreements always lack an expectation of privacy in the car rests on too restrictive a view of the Fourth Amendment's protections. But Byrd's proposal that a rental car's sole occupant always has an expectation of privacy based on mere possession and control would, without qualification, include thieves or others who have no reasonable expectation of privacy. Pp. 9–13.

(1) The Government bases its claim that an unauthorized driver has no privacy interest in the vehicle on a misreading of *Rakas.* There, the Court disclaimed any intent to hold that passengers cannot have an expectation of privacy in automobiles, but found that the passengers there had not claimed "any legitimate expectation of privacy in the areas of the car which were searched." 439 U. S., at 150, n. 17. Byrd, in contrast, was the rental car's driver and sole occupant. His situation is similar to the defendant in *Jones,* who had a reasonable expectation of privacy in his friend's apartment because he "had complete dominion and control over the apartment and could exclude others from it." *Rakas, supra,* at 149. The expectation of privacy that comes from lawful possession and control and the attendant right to exclude should not differ depending on whether a car is rented or owned by someone other than the person currently possessing it, much as it did not seem to matter whether the defendant's friend in *Jones* owned or leased the apartment he permitted the defendant to use in his absence. Pp. 9–11.

(2) The Government also contends that Byrd had no basis for claiming an expectation of privacy in the rental car because his driving of that car was so serious a breach of Reed's rental agreement that the rental company would have considered the agreement "void" once he took the wheel. But the contract says only that the violation

may result in coverage, not the agreement, being void and the renter's being fully responsible for any loss or damage, and the Government fails to explain what bearing this breach of contract, standing alone, has on expectations of privacy in the car. Pp. 11–12.

(3) Central, though, to reasonable expectations of privacy in these circumstances is the concept of lawful possession, for a " 'wrongful' presence at the scene of a search would not enable a defendant to object to the legality of the search," *Rakas, supra,* at 141, n. 9. Thus, a car thief would not have a reasonable expectation of privacy in a stolen car no matter the degree of possession and control. The Court leaves for remand the Government's argument that one who intentionally uses a third party to procure a rental car by a fraudulent scheme for the purpose of committing a crime is no better situated than a car thief. Pp. 12–13.

2. Also left for remand is the Government's argument that, even if Byrd had a right to object to the search, probable cause justified it in any event. The Third Circuit did not reach this question because it concluded, as an initial matter, that Byrd lacked a reasonable expectation of privacy in the rental car. That court has discretion as to the order in which the remanded questions are best addressed. Pp. 13–14.

679 Fed. Appx. 146, vacated and remanded.

KENNEDY, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion, in which GORSUCH, J., joined. ALITO, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–1371

TERRENCE BYRD, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[May 14, 2018]

JUSTICE KENNEDY delivered the opinion of the Court.

In September 2014, Pennsylvania State Troopers pulled over a car driven by petitioner Terrence Byrd. Byrd was the only person in the car. In the course of the traffic stop the troopers learned that the car was rented and that Byrd was not listed on the rental agreement as an author- ized driver. For this reason, the troopers told Byrd they did not need his consent to search the car, including its trunk where he had stored personal effects. A search of the trunk uncovered body armor and 49 bricks of heroin.

The evidence was turned over to federal authorities, who charged Byrd with distribution and possession of heroin with the intent to distribute in violation of 21 U. S. C. §841(a)(1) and possession of body armor by a prohibited person in violation of 18 U. S. C. §931(a)(1). Byrd moved to suppress the evidence as the fruit of an unlawful search. The United States District Court for the Middle District of Pennsylvania denied the motion, and the Court of Appeals for the Third Circuit affirmed. Both courts concluded that, because Byrd was not listed on the rental agreement, he lacked a reasonable expectation of privacy in the car. Based on this conclusion, it appears

that both the District Court and Court of Appeals deemed it unnecessary to consider whether the troopers had probable cause to search the car.

This Court granted certiorari to address the question whether a driver has a reasonable expectation of privacy in a rental car when he or she is not listed as an authorized driver on the rental agreement. The Court now holds that, as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver.

The Court concludes a remand is necessary to address in the first instance the Government's argument that this general rule is inapplicable because, in the circumstances here, Byrd had no greater expectation of privacy than a car thief. If that is so, our cases make clear he would lack a legitimate expectation of privacy. It is necessary to remand as well to determine whether, even if Byrd had a right to object to the search, probable cause justified it in any event.

I

On September 17, 2014, petitioner Terrence Byrd and Latasha Reed drove in Byrd's Honda Accord to a Budget car-rental facility in Wayne, New Jersey. Byrd stayed in the parking lot in the Honda while Reed went to the Budget desk and rented a Ford Fusion. The agreement Reed signed required her to certify that she had a valid driver's license and had not committed certain vehicle-related offenses within the previous three years. An addendum to the agreement, which Reed initialed, provides the following restriction on who may drive the rental car:

> "I understand that the only ones permitted to drive the vehicle other than the renter are the renter's spouse, the renter's co-employee (with the renter's permission, while on company business), or a person

who appears at the time of the rental and signs an Additional Driver Form. These other drivers must also be at least 25 years old and validly licensed.

"PERMITTING AN UNAUTHORIZED DRIVER TO OPERATE THE VEHICLE IS A VIOLATION OF THE RENTAL AGREEMENT. THIS MAY RESULT IN ANY AND ALL COVERAGE OTHERWISE PROVIDED BY THE RENTAL AGREEMENT BEING VOID AND MY BEING FULLY RESPONSIBLE FOR ALL LOSS OR DAMAGE, INCLUDING LIABILITY TO THIRD PARTIES." App. 19.

In filling out the paperwork for the rental agreement, Reed did not list an additional driver.

With the rental keys in hand, Reed returned to the parking lot and gave them to Byrd. The two then left the facility in separate cars—she in his Honda, he in the rental car. Byrd returned to his home in Patterson, New Jersey, and put his personal belongings in the trunk of the rental car. Later that afternoon, he departed in the car alone and headed toward Pittsburgh, Pennsylvania.

After driving nearly three hours, or roughly half the distance to Pittsburgh, Byrd passed State Trooper David Long, who was parked in the median of Interstate 81 near Harrisburg, Pennsylvania. Long was suspicious of Byrd because he was driving with his hands at the "10 and 2" position on the steering wheel, sitting far back from the steering wheel, and driving a rental car. Long knew the Ford Fusion was a rental car because one of its windows contained a barcode. Based on these observations, he decided to follow Byrd and, a short time later, stopped him for a possible traffic infraction.

When Long approached the passenger window of Byrd's car to explain the basis for the stop and to ask for identification, Byrd was "visibly nervous" and "was shaking and

had a hard time obtaining his driver's license." *Id.,* at 37. He handed an interim license and the rental agreement to Long, stating that a friend had rented the car. Long returned to his vehicle to verify Byrd's license and noticed Byrd was not listed as an additional driver on the rental agreement. Around this time another trooper, Travis Martin, arrived at the scene. While Long processed Byrd's license, Martin conversed with Byrd, who again stated that a friend had rented the vehicle. After Martin walked back to Long's patrol car, Long commented to Martin that Byrd was "not on the renter agreement," to which Martin replied, "yeah, he has no expectation of privacy." 3 App. to Brief for Appellant in No. 16–1509 (CA3), at 21:40.

A computer search based on Byrd's identification returned two different names. Further inquiry suggested the other name might be an alias and also revealed that Byrd had prior convictions for weapons and drug charges as well as an outstanding warrant in New Jersey for a probation violation. After learning that New Jersey did not want Byrd arrested for extradition, the troopers asked Byrd to step out of the vehicle and patted him down.

Long asked Byrd if he had anything illegal in the car. When Byrd said he did not, the troopers asked for his consent to search the car. At that point Byrd said he had a "blunt" in the car and offered to retrieve it for them. The officers understood "blunt" to mean a marijuana cigarette. They declined to let him retrieve it and continued to seek his consent to search the car, though they stated they did not need consent because he was not listed on the rental agreement. The troopers then opened the passenger and driver doors and began a thorough search of the passenger compartment.

Martin proceeded from there to search the car's trunk, including by opening up and taking things out of a large cardboard box, where he found a laundry bag containing body armor. At this point, the troopers decided to detain

Byrd.  As Martin walked toward Byrd and said he would be placing him in handcuffs, Byrd began to run away.  A third trooper who had arrived on the scene joined Long and Martin in pursuit.  When the troopers caught up to Byrd, he surrendered and admitted there was heroin in the car.  Back at the car, the troopers resumed their search of the laundry bag and found 49 bricks of heroin.

In pretrial proceedings Byrd moved to suppress the evidence found in the trunk of the rental car, arguing that the search violated his Fourth Amendment rights.  Although Long contended at a suppression hearing that the troopers had probable cause to search the car after Byrd stated it contained marijuana, the District Court denied Byrd's motion on the ground that Byrd lacked "standing" to contest the search as an initial matter, 2015 WL 5038455, *2 (MD Pa., Aug. 26, 2015) (citing *United States* v. *Kennedy*, 638 F. 3d 159, 165 (CA3 2011)).  Byrd later entered a conditional guilty plea, reserving the right to appeal the suppression ruling.

The Court of Appeals affirmed in a brief summary opinion.  679 Fed. Appx. 146 (CA3 2017).  As relevant here, the Court of Appeals recognized that a "circuit split exists as to whether the sole occupant of a rental vehicle has a Fourth Amendment expectation of privacy when that occupant is not named in the rental agreement"; but it noted that Circuit precedent already had "spoken as to this issue . . . and determined such a person has no expectation of privacy and therefore no standing to challenge a search of the vehicle." *Id.,* at 150 (citing *Kennedy, supra,* at 167–168).  The Court of Appeals did not reach the probable-cause question.

This Court granted Byrd's petition for a writ of certiorari, 582 U. S. \_\_\_ (2017), to address the conflict among the Courts of Appeals over whether an unauthorized driver has a reasonable expectation of privacy in a rental car. Compare *United States* v. *Seeley*, 331 F. 3d 471, 472 (CA5

2003) (*per curiam*); *United States* v. *Wellons*, 32 F. 3d 117, 119 (CA4 1994); *United States* v. *Roper*, 918 F. 2d 885, 887–888 (CA10 1990), with *United States* v. *Smith*, 263 F. 3d 571, 581–587 (CA6 2001); *Kennedy*, *supra*, at 165–168, and with *United States* v. *Thomas*, 447 F. 3d 1191, 1196–1199 (CA9 2006); *United States* v. *Best*, 135 F. 3d 1223, 1225 (CA8 1998).

## II

Few protections are as essential to individual liberty as the right to be free from unreasonable searches and seizures. The Framers made that right explicit in the Bill of Rights following their experience with the indignities and invasions of privacy wrought by "general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence." *Chimel* v. *California*, 395 U. S. 752, 761 (1969). Ever mindful of the Fourth Amendment and its history, the Court has viewed with disfavor practices that permit "police officers unbridled discretion to rummage at will among a person's private effects." *Arizona* v. *Gant*, 556 U. S. 332, 345 (2009).

This concern attends the search of an automobile. See *Delaware* v. *Prouse*, 440 U. S. 648, 662 (1979). The Court has acknowledged, however, that there is a diminished expectation of privacy in automobiles, which often permits officers to dispense with obtaining a warrant before conducting a lawful search. See, *e.g.*, *California* v. *Acevedo*, 500 U. S. 565, 579 (1991).

Whether a warrant is required is a separate question from the one the Court addresses here, which is whether the person claiming a constitutional violation "has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Rakas* v. *Illinois*, 439 U. S. 128, 133 (1978). Answering that question requires examination of whether the person claiming the

constitutional violation had a "legitimate expectation of privacy in the premises" searched. *Id.,* at 143. "Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest." *Id.,* at 144, n. 12. Still, "property concepts" are instructive in "determining the presence or absence of the privacy interests protected by that Amendment." *Ibid.*

Indeed, more recent Fourth Amendment cases have clarified that the test most often associated with legitimate expectations of privacy, which was derived from the second Justice Harlan's concurrence in *Katz* v. *United States*, 389 U. S. 347 (1967), supplements, rather than displaces, "the traditional property-based understanding of the Fourth Amendment." *Florida* v. *Jardines*, 569 U. S. 1, 11 (2013). Perhaps in light of this clarification, Byrd now argues in the alternative that he had a common-law property interest in the rental car as a second bailee that would have provided him with a cognizable Fourth Amendment interest in the vehicle. But he did not raise this argument before the District Court or Court of Appeals, and those courts did not have occasion to address whether Byrd was a second bailee or what consequences might follow from that determination. In those courts he framed the question solely in terms of the *Katz* test noted above. Because this is "a court of review, not of first view," *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005), it is generally unwise to consider arguments in the first instance, and the Court declines to reach Byrd's contention that he was a second bailee.

Reference to property concepts, however, aids the Court in assessing the precise question here: Does a driver of a rental car have a reasonable expectation of privacy in the car when he or she is not listed as an authorized driver on the rental agreement?

### III
### A

One who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it.  More difficult to define and delineate are the legitimate expectations of privacy of others.

On the one hand, as noted above, it is by now well established that a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it.  See *Jones* v. *United States*, 362 U. S. 257, 259 (1960); *Katz, supra*, at 352; *Mancusi* v. *DeForte*, 392 U. S. 364, 368 (1968); *Minnesota* v. *Olson*, 495 U. S. 91, 98 (1990).

On the other hand, it is also clear that legitimate presence on the premises of the place searched, standing alone, is not enough to accord a reasonable expectation of privacy, because it "creates too broad a gauge for measurement of Fourth Amendment rights."  *Rakas*, 439 U. S., at 142; see also *id.,* at 148 ("We would not wish to be understood as saying that legitimate presence on the premises is irrelevant to one's expectation of privacy, but it cannot be deemed controlling"); *Minnesota* v. *Carter*, 525 U. S. 83, 91 (1998).

Although the Court has not set forth a single metric or exhaustive list of considerations to resolve the circumstances in which a person can be said to have a reasonable expectation of privacy, it has explained that "[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U. S., at 144, n. 12.  The two concepts in cases like this one are often linked.  "One of the main rights attaching to property is the right to exclude others," and, in the main, "one who owns or lawfully possesses or controls

property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Ibid.* (citing 2 W. Blackstone, Commentaries on the Laws of England, ch. 1). This general property-based concept guides resolution of this case.

## B

Here, the Government contends that drivers who are not listed on rental agreements always lack an expectation of privacy in the automobile based on the rental company's lack of authorization alone. This *per se* rule rests on too restrictive a view of the Fourth Amendment's protections. Byrd, by contrast, contends that the sole occupant of a rental car always has an expectation of privacy in it based on mere possession and control. There is more to recommend Byrd's proposed rule than the Government's; but, without qualification, it would include within its ambit thieves and others who, not least because of their lack of any property-based justification, would not have a reasonable expectation of privacy.

## 1

Stripped to its essentials, the Government's position is that only authorized drivers of rental cars have expectations of privacy in those vehicles. This position is based on the following syllogism: Under *Rakas*, passengers do not have an expectation of privacy in an automobile glove compartment or like places; an unauthorized driver like Byrd would have been the passenger had the renter been driving; and the unauthorized driver cannot obtain greater protection when he takes the wheel and leaves the renter behind. The flaw in this syllogism is its major premise, for it is a misreading of *Rakas*.

The Court in *Rakas* did not hold that passengers cannot have an expectation of privacy in automobiles. To the contrary, the Court disclaimed any intent to hold "that a

passenger lawfully in an automobile may not invoke the exclusionary rule and challenge a search of that vehicle unless he happens to own or have a possessory interest in it." 439 U. S., at 150, n. 17 (internal quotation marks omitted). The Court instead rejected the argument that legitimate presence alone was sufficient to assert a Fourth Amendment interest, which was fatal to the petitioners' case there because they had "claimed only that they were 'legitimately on [the] premises' and did not claim that they had any legitimate expectation of privacy in the areas of the car which were searched." *Ibid.*

What is more, the Government's syllogism is beside the point, because this case does not involve a passenger at all but instead the driver and sole occupant of a rental car. As Justice Powell observed in his concurring opinion in *Rakas*, a "distinction . . . may be made in some circumstances between the Fourth Amendment rights of passengers and the rights of an individual who has exclusive control of an automobile or of its locked compartments." *Id.*, at 154. This situation would be similar to the defendant in *Jones*, *supra*, who, as *Rakas* notes, had a reasonable expectation of privacy in his friend's apartment because he "had complete dominion and control over the apartment and could exclude others from it," 439 U. S., at 149. Justice Powell's observation was also consistent with the majority's explanation that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude," *id.*, at 144, n. 12, an explanation tied to the majority's discussion of *Jones*.

The Court sees no reason why the expectation of privacy that comes from lawful possession and control and the attendant right to exclude would differ depending on whether the car in question is rented or privately owned by someone other than the person in current possession of it, much as it did not seem to matter whether the friend of

the defendant in *Jones* owned or leased the apartment he permitted the defendant to use in his absence. Both would have the expectation of privacy that comes with the right to exclude. Indeed, the Government conceded at oral argument that an unauthorized driver in sole possession of a rental car would be permitted to exclude third parties from it, such as a carjacker. Tr. of Oral Arg. 48–49.

2

The Government further stresses that Byrd's driving the rental car violated the rental agreement that Reed signed, and it contends this violation meant Byrd could not have had any basis for claiming an expectation of privacy in the rental car at the time of the search. As anyone who has rented a car knows, car-rental agreements are filled with long lists of restrictions. Examples include prohibitions on driving the car on unpaved roads or driving while using a handheld cellphone. Few would contend that violating provisions like these has anything to do with a driver's reasonable expectation of privacy in the rental car—as even the Government agrees. Brief for United States 32.

Despite this concession, the Government argues that permitting an unauthorized driver to take the wheel of a rental car is a breach different in kind from these others, so serious that the rental company would consider the agreement "void" the moment an unauthorized driver takes the wheel. *Id.*, at 4, 15, 16, 27. To begin with, that is not what the contract says. It states: "Permitting an unauthorized driver to operate the vehicle is a violation of the rental agreement. This may result in any and all coverage otherwise provided by the rental agreement being void and my being fully responsible for all loss or damage, including liability to third parties." App. 24 (emphasis deleted).

Putting the Government's misreading of the contract aside, there may be countless innocuous reasons why an

unauthorized driver might get behind the wheel of a rental car and drive it—perhaps the renter is drowsy or inebriated and the two think it safer for the friend to drive them to their destination. True, this constitutes a breach of the rental agreement, and perhaps a serious one, but the Government fails to explain what bearing this breach of contract, standing alone, has on expectations of privacy in the car. Stated in different terms, for Fourth Amendment purposes there is no meaningful difference between the authorized-driver provision and the other provisions the Government agrees do not eliminate an expectation of privacy, all of which concern risk allocation between private parties—violators might pay additional fees, lose insurance coverage, or assume liability for damage resulting from the breach. But that risk allocation has little to do with whether one would have a reasonable expectation of privacy in the rental car if, for example, he or she otherwise has lawful possession of and control over the car.

3

The central inquiry at this point turns on the concept of lawful possession, and this is where an important qualification of Byrd's proposed rule comes into play. *Rakas* makes clear that "'wrongful' presence at the scene of a search would not enable a defendant to object to the legality of the search." 439 U. S., at 141, n. 9. "A burglar plying his trade in a summer cabin during the off season," for example, "may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.'" *Id.*, at 143, n. 12. Likewise, "a person present in a stolen automobile at the time of the search may [not] object to the lawfulness of the search of the automobile." *Id.,* at 141, n. 9. No matter the degree of possession and control, the car thief would not have a reasonable expectation of privacy in a stolen car.

On this point, in its merits brief, the Government as-

serts that, on the facts here, Byrd should have no greater expectation of privacy than a car thief because he intentionally used a third party as a strawman in a calculated plan to mislead the rental company from the very outset, all to aid him in committing a crime. This argument is premised on the Government's inference that Byrd knew he would not have been able to rent the car on his own, because he would not have satisfied the rental company's requirements based on his criminal record, and that he used Reed, who had no intention of using the car for her own purposes, to procure the car for him to transport heroin to Pittsburgh.

It is unclear whether the Government's allegations, if true, would constitute a criminal offense in the acquisition of the rental car under applicable law. And it may be that there is no reason that the law should distinguish between one who obtains a vehicle through subterfuge of the type the Government alleges occurred here and one who steals the car outright.

The Government did not raise this argument in the District Court or the Court of Appeals, however. It relied instead on the sole fact that Byrd lacked authorization to drive the car. And it is unclear from the record whether the Government's inferences paint an accurate picture of what occurred. Because it was not addressed in the District Court or Court of Appeals, the Court declines to reach this question. The proper course is to remand for the argument and potentially further factual development to be considered in the first instance by the Court of Appeals or by the District Court.

IV

The Government argued in its brief in opposition to certiorari that, even if Byrd had a Fourth Amendment interest in the rental car, the troopers had probable cause to believe it contained evidence of a crime when they

initiated their search. If that were true, the troopers may have been permitted to conduct a warrantless search of the car in line with the Court's cases concerning the automobile exception to the warrant requirement. See, *e.g.*, *Acevedo*, 500 U. S., at 580. The Court of Appeals did not reach this question because it concluded, as an initial matter, that Byrd lacked a reasonable expectation of privacy in the rental car.

It is worth noting that most courts analyzing the question presented in this case, including the Court of Appeals here, have described it as one of Fourth Amendment "standing," a concept the Court has explained is not distinct from the merits and "is more properly subsumed under substantive Fourth Amendment doctrine." *Rakas*, *supra*, at 139.

The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits. *Arizona Christian School Tuition Organization* v. *Winn*, 563 U. S. 125, 129 (2011) ("To obtain a determination on the merits in federal court, parties seeking relief must show that they have standing under Article III of the Constitution"); see also *Rakas*, *supra*, at 138–140. Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim. On remand, then, the Court of Appeals is not required to assess Byrd's reasonable expectation of privacy in the rental car before, in its discretion, first addressing whether there was probable cause for the search, if it finds the latter argument has been preserved.

## V

Though new, the fact pattern here continues a well-traveled path in this Court's Fourth Amendment jurisprudence. Those cases support the proposition, and the Court now holds, that the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy. The Court leaves for remand two of the Government's arguments: that one who intentionally uses a third party to procure a rental car by a fraudulent scheme for the purpose of committing a crime is no better situated than a car thief; and that probable cause justified the search in any event. The Court of Appeals has discretion as to the order in which these questions are best addressed.

\*      \*      \*

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1371

_____

## TERRENCE BYRD, PETITIONER _v._ UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[May 14, 2018]

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, concurring.

Although I have serious doubts about the "reasonable expectation of privacy" test from _Katz_ v. _United States_, 389 U. S. 347, 360–361 (1967) (Harlan, J., concurring), I join the Court's opinion because it correctly navigates our precedents, which no party has asked us to reconsider. As the Court notes, Byrd also argued that he should prevail under the original meaning of the Fourth Amendment because the police interfered with a property interest that he had in the rental car. I agree with the Court's decision not to review this argument in the first instance. In my view, it would be especially "unwise" to reach that issue, _ante,_ at 7, because the parties fail to adequately address several threshold questions.

The Fourth Amendment guarantees the people's right to be secure from unreasonable searches of "their persons, houses, papers, and effects." With this language, the Fourth Amendment gives "_each_ person . . . the right to be secure against unreasonable searches and seizures in _his own_ person, house, papers, and effects." _Minnesota_ v. _Carter_, 525 U. S. 83, 92 (1998) (Scalia, J., concurring). The issue, then, is whether Byrd can prove that the rental car was _his_ effect.

That issue seems to turn on at least three threshold questions. First, what kind of property interest do indi-

viduals need before something can be considered "their . . . effec[t]" under the original meaning of the Fourth Amendment?  Second, what body of law determines whether that property interest is present—modern state law, the common law of 1791, or something else?  Third, is the unauthorized use of a rental car illegal or otherwise wrongful under the relevant law, and, if so, does that illegality or wrongfulness affect the Fourth Amendment analysis?

The parties largely gloss over these questions, but the answers seem vitally important to assessing whether Byrd can claim that the rental car is his effect.  In an appropriate case, I would welcome briefing and argument on these questions.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1371

_____

## TERRENCE BYRD, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[May 14, 2018]

JUSTICE ALITO, concurring.

The Court holds that an unauthorized driver of a rental car is not always barred from contesting a search of the vehicle. Relevant questions bearing on the driver's ability to raise a Fourth Amendment claim may include: the terms of the particular rental agreement, see *ante*, at 11–12; the circumstances surrounding the rental, *ante*, at 13; the reason why the driver took the wheel, *ante*, at 11–12; any property right that the driver might have, *ante*, at 7; and the legality of his conduct under the law of the State where the conduct occurred, *ante*, at 12–13. On remand, the Court of Appeals is free to reexamine the question whether petitioner may assert a Fourth Amendment claim or to decide the appeal on another appropriate ground. *Ante*, at 14–15. On this understanding, I join the opinion of the Court.