**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1509

_____

UNITED STATES OF AMERICA

v.

TERRENCE BYRD,
Appellant

_____

On Appeal from the District Court
for the Middle District of Pennsylvania
(M.D. Pa. Crim. No. 1-14-cr-00321-001)
Honorable William C. Caldwell, U.S. District Judge

_____

On Remand from the Supreme Court of the United States
on June 15, 2018
Submitted on Remand Under Third Circuit L.A.R. 34.1(a)
on June 18, 2018

Before: FISHER[*], KRAUSE, and MELLOY[**], *Circuit Judges*

(Opinion filed: August 8, 2018)
_____

OPINION[***]
_____

KRAUSE, *Circuit Judge*.

_____

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.
[**] Honorable Michael J. Melloy, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.
[***] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

This matter comes to us on remand from the United States Supreme Court. In our first decision in this case, we affirmed Terrence Byrd's convictions for possessing heroin with intent to distribute and possessing body armor as a prohibited person and, in so doing, rejected his argument that the evidence against him should have been excluded as the fruit of an unlawful search as the search was lawful under *United States v. Kennedy*, 638 F.3d 159 (3d Cir. 2011), which was controlling circuit precedent at the time. *United States v. Byrd* (*Byrd II*), 679 F. App'x 146, 150 (3d Cir. 2017). The Supreme Court vacated and remanded, resolving a circuit split and abrogating *Kennedy*. *Byrd v. United States* (*Byrd III*), 138 S. Ct. 1518, 1531 (2018). Having requested and reviewed further briefing from the parties on the effect of the Supreme Court's decision, we will affirm on the alternative ground that, because the search here was authorized by our precedent at the time it was conducted, the good-faith exception to the exclusionary rule applies.

## I.      Background

Our prior opinion recounts the factual background in more detail, *see Byrd II*, 679 F. App'x at 147–49, and we set forth here only the facts pertinent to the issues remaining on remand.

The evidence against Byrd was discovered after officers stopped his car for a traffic violation in September 2014. Because the officers recognized Byrd's car as a rental, they asked him to produce the rental agreement, and he complied. The agreement did not list Byrd as either the renter or a permitted driver. The officers then ran Byrd's

constitute binding precedent.

driver's license information through their computer and discovered he had an outstanding nonextradition warrant from a neighboring state, as well as prior charges for drug, weapon, and assault offenses.

After returning to Byrd's car, the officers asked him if there was anything illegal in it; Byrd appeared nervous and responded that he had a "blunt" inside. The officers then asked him if they could search the car, but also stated, consistent with *Kennedy*, that "they did not need consent because he was not listed on the rental agreement." *Byrd III*, 138 S. Ct. at 1525. They then searched the car and found a bag containing body armor and 49 bricks of heroin.

At the time of the search, this Court's precedent was clear: "[T]he driver of a rental car whose name is not listed on the rental agreement generally lacks a legitimate expectation of privacy in the car." *Kennedy*, 638 F.3d at 161. So when Byrd, who had enlisted a friend to rent the car on his behalf and was not listed on the rental agreement himself, moved to suppress the body armor and the drugs on the ground that the search was unlawful, the District Court denied the motion, explaining that Byrd "was not a party to the rental agreement" and that *Kennedy* "clearly instructed that, generally, unauthorized drivers of rental vehicles lack [Fourth Amendment] standing to challenge a search thereof." *United States v. Byrd*, No. 1:14-CR-321, 2015 WL 5038455, at *2 (M.D. Pa. Aug. 26, 2015). We affirmed, explaining that, while a "circuit split exist[ed] as to whether the sole occupant of a rental vehicle has a Fourth Amendment expectation of privacy when that occupant is not named in the rental agreement," our Court had

3

already "spoken as to this issue" in *Kennedy* and determined that he does not. *Byrd II*, 679 F. App'x at 150.

To resolve that split in authority, the Supreme Court granted certiorari and subsequently vacated our decision, overturning *Kennedy* and holding that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd III*, 138 S. Ct. at 1531. The Court remanded for us to address whether the search was justified on an alternative basis, such as probable cause or because Byrd, having "intentionally use[d] a third party to procure a rental car by a fraudulent scheme for the purpose of committing a crime," lacked a reasonable expectation of privacy. *Id.*

**II.**

The search in this case was authorized by binding precedent in this Circuit at the time it was conducted. Accordingly, the good-faith exception to the exclusionary rule applies, and we will affirm.

"[S]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis v. United States*, 564 U.S. 229, 232 (2011). *Davis* involved a vehicle search that took place in Alabama, and the officers

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts." *United States v. Wrensford*, 866 F.3d 76, 85 n.4 (3d Cir. 2017), *cert. denied sub nom. Muller v. United States*, 138 S. Ct. 1566, 200 L. Ed. 2d 746 (2018) (citation and brackets omitted).

had "followed the Eleventh Circuit's . . . precedent to the letter." *Id.* at 235, 239. Two years after the search, however, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009), abrogating the Eleventh Circuit's precedent and holding that the type of search at issue in that case violated the Fourth Amendment. Nonetheless, *Davis* held that because the "officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way," the search was subject to the "good-faith exception" to the exclusionary rule. 564 U.S. at 239–40. This was so, the Court explained, because "when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities," and the "deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty." *Id.* at 241 (brackets omitted).

Those observations apply here with equal force. The search in this case was conducted in 2014, i.e., when our decision in *Kennedy* was binding circuit precedent, holding that "the driver of a rental car whose name is not listed on the rental agreement generally lacks a legitimate expectation of privacy in the car." 638 F.3d at 161. That the Supreme Court has now overturned *Kennedy*, *see Byrd III*, 138 S. Ct. at 1531, does not disturb the fact that the search here, no less than the search in *Davis*, was conducted "in strict compliance with then-binding Circuit law and was not culpable in any way." 564 U.S. at 239–40. Indeed, not only did the search in this case comply with *Kennedy*, but the record indicates that the officers specifically acted in reliance on *Kennedy*. As the Supreme Court itself recounted, "the troopers learned that the car was rented and that

5

Byrd was not listed on the rental agreement as an authorized driver," and, "*[f]or this reason*, the troopers told Byrd they did not need his consent to search the car." *Byrd III*, 138 S. Ct. at 1523 (emphasis added). Because the search was "conducted in objectively reasonable reliance on binding appellate precedent," it is "not subject to the exclusionary rule." *Davis*, 564 U.S. at 232.

Byrd argues that *Davis* is inapposite because there, "the precedent authorized the search," whereas here, "the precedent did not authorize the search—it merely precluded Mr. Byrd from objecting to it." Appellant's Supp. Reply Br. 6. Without citing any authority for the proposition, Byrd contends that *Davis* "has no application where the search may be unconstitutional, but the party has no Fourth Amendment standing." *Id.*

*Davis* and the Supreme Court's decision in this case foreclose this argument. To start, there is no material difference between the Circuit precedent at issue in *Davis* and our precedent in *Kennedy*: Each held that a certain kind of search was lawful under the Fourth Amendment, so each "specifically authorize[d] a particular police practice." *Davis*, 564 U.S. at 241 (emphasis omitted); *see United States v. Katzin*, 769 F.3d 163, 176 (3d Cir. 2014) (en banc) ("We construe, *arguendo*, this language narrowly to mean that the relied-upon case must affirmatively authorize the precise conduct at issue in the case under consideration."). Byrd's suggestion notwithstanding, there is no plausible argument that the search here "may [have] be[en] unconstitutional" from the officers' perspective when it was conducted, as *Kennedy* expressly permitted such searches. Appellant's Supp. Reply Br. 6. And, to the extent that *Kennedy* was phrased in terms of

6

"Fourth Amendment standing," the Supreme Court, in overturning it, explained that, while "most courts analyzing the question presented in this case, including the Court of Appeals here, ha[d] described it as one of Fourth Amendment 'standing,'" that is "a concept the Court has explained is not distinct from the merits and is 'more properly subsumed under substantive Fourth Amendment doctrine.'" *Byrd III*, 138 S. Ct. at 1530 (quoting *Rakas v. Illinois*, 439 U.S. 128, 139 (1978)).

In short, *Davis* controls,[2] and we will affirm Byrd's convictions on that basis.

---

[2] As one commentator has noted, while *Davis* may "amount[] in practice to a Fourth Amendment exception from traditional retroactivity rules," it represents an effort to balance the need to "develop the law in the broad array of contexts in which Fourth Amendment questions arise" against the "genuine social costs" of applying remedies such as the exclusionary rule in cases where "the police are not acting culpably." Orin S. Kerr, *Fourth Amendment Remedies and Development of the Law: A Comment on* Camreta v. Greene *and* Davis v. United States, 2010–2011 Cato Sup. Ct. Rev. 237, 238, 253 (2011).