# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff below, Respondent**

**v.) No. 24-69** (Monongalia County 22-F-134)

**William Matthew Wilson,**
**Defendant below, Petitioner**

## MEMORANDUM DECISION

Petitioner William Matthew Wilson appeals his convictions, as reflected in the January 3, 2024, sentencing order of the Circuit Court of Monongalia County, for kidnapping, first-degree robbery, assault during the commission of a felony, burglary, grand larceny, and conspiracy.[1] The petitioner argues that the evidence was insufficient to support his convictions and that the circuit court erred in denying his motion to suppress evidence seized during a warrantless search of the victim's truck, in which the petitioner was located. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

The State asserted that in the early evening hours of December 23, 2021, the petitioner and his brother Benjamin Lee Wilson committed several crimes against Martin Knouse, a man in his seventies, at Mr. Knouse's home in Granville, West Virginia. At trial, Mr. Knouse testified that he sat down to watch television when he heard a knock at his front door. When he reached the front door, two individuals breached the door and entered the house. Mr. Knouse described the intruders as wearing dark clothing and hoods that concealed their faces.

When the assailants entered Mr. Knouse's residence, they struck him in the head with an iron pipe. After being hit, Mr. Knouse blacked out for a brief period of time before awakening in a spare room where he kept his safe. Mr. Knouse testified that one intruder was beating him, while the other held him in place. Eventually, the intruders tied and bound Mr. Knouse's hands and legs with rope. The assailants asked Mr. Knouse to open the safe located in his spare room, but he repeatedly declined their requests.

Throughout Mr. Knouse's ordeal, one individual would leave the room and search the house for valuables before returning to continue beating him. Mr. Knouse testified that he was

---

[1] The petitioner appears by counsel John C. Rogers, and the State appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

beaten with skillets and wooden chair arms. Believing that he may be killed, Mr. Knouse eventually opened the safe. The assailants removed several items from within the safe, loaded these items into Mr. Knouse's Ford F-150 pickup truck, and fled the scene. While Mr. Knouse could not recall the exact amount, he estimated that the safe contained in excess of $10,000. Mr. Knouse later determined that the assailants also stole coffee cans containing silver dollars and a silver bar he inherited from his father. After realizing that the intruders had left his residence, Mr. Knouse freed himself from his restraints and walked to his neighbor's house. The neighbor's daughter called 911. Subsequently, Mr. Knouse was transported to Ruby Memorial Hospital to receive treatment for his injuries.[2]

Mr. Knouse testified that the petitioner was a former tenant who had also performed maintenance work for Mr. Knouse and the petitioner's significant other, Jenny Ponceroff, had cleaned Mr. Krouse's house. Consequently, the petitioner knew about the safe in Mr. Krouse's spare room. Mr. Krouse stated that the petitioner and Ms. Ponceroff were evicted after the rental property was sold by Mr. Knouse. Following the eviction, the petitioner confronted and threatened Mr. Knouse. Mr. Knouse testified that he took the petitioner's threats seriously and, after the confrontation, started carrying a pistol. While the assailants overpowered Mr. Knouse when he answered his door on December 23, 2021, Mr. Knouse stated that he had the pistol with him. While Mr. Krouse gave a detailed description of what his assailants were wearing, he testified that he did not recognize them because they hid their identities.

Law enforcement officers with the Collier Township Police Department in Pennsylvania located the petitioner in Mr. Knouse's Ford F-150 pickup truck on January 3, 2022, when they responded to a report of an unresponsive individual inside a vehicle. The officers searched the pickup truck and seized at least $15,800 in cash, a silver bar, and drug paraphernalia. The petitioner moved to suppress the items seized from the pickup truck. The circuit court denied the petitioner's motion to suppress following a pretrial hearing, and the evidence the officers seized from inside the Ford F-150 pickup truck was admitted at trial.

Also, Chief Joseph Craig Corkrean of the Granville, West Virginia, Police Department testified regarding the contents of a cell phone that was seized from the petitioner's brother and codefendant, Benjamin Lee Wilson. In addition to his duties as police chief, Chief Corkrean operated a digital forensic lab that examines devices submitted from across West Virginia. Upon forensically examining Benjamin Lee Wilson's device, Chief Corkrean testified that the first text activity for Benjamin Lee Wilson's phone was on December 24, 2021, the day after the home invasion where two assailants held Mr. Knouse captive. Initial messages showed that, in the morning of December 24, 2021, Benjamin Lee Wilson—who was using a brand new phone—texted two friends asking for "Bill's" cell phone number and advised at least one contact that "it's very important." One friend replied by providing Benjamin Lee Wilson with a phone number. Thereafter, Benjamin Lee Wilson and "Bill" exchanged text messages regarding not going "anywhere near that truck," possibly paying for a taxi to bring "Bill" home, dividing the money obtained from a "job," getting "Bill" new clothes and a new cell phone, and throwing "Bill's" current cell phone away.

---

[2] Mr. Knouse testified that his injuries included permanent hearing loss in one ear.

Ronald Kerns, a detective with the Granville Police Department, testified regarding surveillance footage of the possible suspects walking along Main Street in Granville during the evening of December 23, 2021. The State's final witness was Sherry Lowther, Mr. Knouse's daughter-in-law, who testified that she installed security cameras at Mr. Knouse's house after the petitioner threatened him in June 2021. On the evening of December 23, 2021, the security cameras, which would rotate and record sounds, captured audio of the entire incident inside Mr. Knouse's house between Mr. Knouse and the intruders. The security cameras also recorded video footage of the assailants outside of the residence while they were starting Mr. Knouse's Ford F-150 pickup truck, loading the truck with stolen items from Mr. Knouse's home, and then leaving the residence in the truck. The jury watched the surveillance footage and listened to the audio recording of the sounds of the home invasion while it was taking place.

After instructions, closing arguments, and deliberations, the jury convicted the petitioner and his brother of kidnapping, first-degree robbery, assault during the commission of a felony, burglary, grand larceny, and conspiracy. The circuit court sentenced the petitioner to a life term of incarceration, with the possibility of parole, for kidnapping; twenty years of incarceration for first-degree robbery; two to ten years of incarceration for assault during the commission of a felony; one to fifteen years of incarceration for burglary; one to ten years of incarceration for grand larceny; and one to five years of incarceration for conspiracy, to be served consecutively.

The petitioner appeals the circuit court's January 3, 2024, sentencing order. "On an appeal to this Court[,] the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 1, *White v. Haines*, 215 W. Va. 698, 601 S.E.2d 18 (2004) (quoting Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)).

On appeal, the petitioner initially argues that the evidence was insufficient to support his various convictions. When a defendant challenges his convictions on sufficiency grounds, we have held that "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Here, the petitioner does not discuss his convictions individually or address the elements of each offense the State needed to prove beyond a reasonable doubt. Instead, the petitioner advances a more basic argument: that he was never positively identified as one of the individuals who forced their way inside Mr. Knouse's home and beat and robbed him.

We review all the evidence "in the light most favorable to the prosecution," "credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution," and will set aside a verdict "*only* when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part (emphasis added). The evidence indicated that the petitioner was one of Mr. Knouse's assailants in three ways. First, the petitioner had a motive to attack and rob Mr. Knouse. Upset over his eviction, the petitioner confronted and threatened Mr. Knouse. The petitioner's threats were credible enough that Mr. Knouse began carrying a pistol and had security cameras installed at his residence. Next, the day after the December 23, 2021, home invasion, the

3

petitioner's brother and codefendant Benjamin Lee Wilson and an individual named "Bill" engaged in a conversation through text messages about not going "anywhere near that truck," possibly paying for a taxi to bring "Bill" home, dividing the money obtained from a "job," getting "Bill" new clothes and a new cell phone, and throwing "Bill's" current cell phone away. Finally, when Mr. Knouse's stolen Ford F-150 pickup truck was located on January 3, 2022, law enforcement found the petitioner inside the vehicle with items taken from Mr. Knouse's house. Therefore, under the standards set forth in Syllabus Points 1 and 3 of *Guthrie*, we conclude that a jury could rationally find that the petitioner was one of the individuals who forced their way inside Mr. Knouse's home and beat and robbed him.

As his second assignment of error, the petitioner argues that the circuit court erred in denying his motion to suppress the evidence seized during a warrantless search of Mr. Knouse's Ford F-150 pickup truck. In reviewing the circuit court's denial of the petitioner's motion to suppress, we "construe all facts in the light most favorable to the State, as it was the prevailing party below," and review the court's findings of fact for "clear error." Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). However, "the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*." *Id.* at 107, 468 S.E.2d at 722, Syl. Pt. 2, in part. Ultimately, "a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." *Id.*

While the petitioner argues that law enforcement should have obtained a warrant before searching Mr. Knouse's stolen Ford F-150 pickup truck, the petitioner makes critical concessions that undermine his argument. First, the petitioner characterizes law enforcement's encounter with him as a well-being check. Second, the allegation that the truck was stolen undermines his Fourth Amendment argument because he does not argue that he had lawful ownership and control over the vehicle such that he had a reasonable expectation of privacy in it.

In Syllabus Point 7 of *Ullom v. Miller*, 227 W. Va. 1, 705 S.E.2d 111 (2010), we held:

> For an encounter to come within the "community caretaker" doctrine exception to the warrant requirement, the State must establish that: (1) given the totality of the circumstances, a reasonable and prudent police officer would have perceived a need to promptly act in the proper discharge of his or her community caretaker duties; (2) Community caretaking must be the objectively reasonable, independent and substantial justification for the intrusion; (3) the police officer's action must be apart from the intent to arrest, or the detection, investigation, or acquisition of criminal evidence; and (4) the police officer must be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion.

According to the testimony at the suppression hearing, on January 3, 2022, law enforcement officers with the Collier Township Police Department in Pennsylvania immediately responded to a report of an unresponsive individual inside a vehicle for forty-five minutes. The officers arrived to find the stolen Ford F-150 pickup truck in a parking lot of a landscaping business that was closed

for the winter. EMS also responded to the scene "due to the nature of the call" as there was the need "to get [the petitioner] the medical treatment that he deserved." While the petitioner refused medical treatment, he had open sores on his body and "what looked like to be a mark that was—where an injection mark from a hypodermic needle" was located on one of the petitioner's feet.[3] As the petitioner concedes in his brief, "it was evident that Petitioner was under the influence of controlled substances and unable to operate a vehicle." Therefore, the officers' encounter with the petitioner was a lawful well-being check pursuant to Syllabus Point 7 of *Ullom*.

Next, the petitioner appears to discuss various exceptions to the Fourth Amendment's warrant requirement to show that none of the exceptions apply to the search of the Ford F-150 pickup truck. However, the petitioner also concedes that, pursuant to *Byrd v. United States*, 584 U.S. 395 (2018), a person must have lawful possession and control of a vehicle to have a reasonable expectation of privacy in it. *Id.* at 398-99; *see State v. Ward*, 249 W. Va. 347, 355, 895 S.E.2d 202, 210 (2023) (explaining that, for purposes of search and seizure jurisprudence, the phrase "Fourth Amendment standing" constitutes "useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search" (quoting *Byrd*, 584 U.S. at 410–11)). When law enforcement arrived at the scene, the officers checked the vehicle's registration through the NCIC database and learned that it was the Ford F-150 pickup truck stolen from Mr. Knouse. The petitioner makes no claim that he ever had lawful possession and control of the Ford F-150 pickup truck. Thus, the petitioner's objection to the search of the truck is without merit because he lacked a cognizable Fourth Amendment interest—that is, any reasonable expectation of privacy—in the truck. Therefore, the circuit court did not err in denying the petitioner's motion to suppress the evidence seized during the search of Mr. Knouse's Ford F-150 pickup truck.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 11, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[3] The petitioner was barefoot.