[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10741

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEVON COHEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00134-TPB-AEP-1

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

WILSON, Circuit Judge:

Devon Cohen appeals his conviction for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After pulling Cohen over in a rental vehicle for running a stop sign and arresting him for resisting, the Tampa Police Department conducted an inventory search of the vehicle and located a loaded firearm belonging to him. Cohen challenged the constitutionality of the search in the district court and moved to suppress the gun, but the court found that Cohen did not have Fourth Amendment standing to do so because his license was suspended and he was not an authorized driver on the rental car agreement. It also found that, in any event, the inventory search was lawful and reasonable considering the totality of the circumstances. On appeal, Cohen argues that driving with a suspended license does not prohibit him from establishing Fourth Amendment standing to challenge the search. He further asserts that the inventory search violated his Fourth Amendment rights because the government failed to demonstrate that the search complied with department policy. We conclude that Cohen has standing to challenge the inventory search; nonetheless, we affirm the district court's denial of his suppression motion on the basis that the inventory search was lawful.

## I.

On the afternoon of February 16, 2020, Tampa Police Department officers observed a vehicle, driven by Cohen, run a stop sign. After being flagged by the officers, Cohen pulled into the parking lot for Oakhurst Apartments. Cohen then exited the vehicle. The officers ordered Cohen to return to the car, but Cohen repeatedly refused. Officers then placed Cohen under arrest for resisting arrest without violence, after which an officer discovered that Cohen's license was suspended.  Officers determined that the car Cohen was driving was registered to Enterprise Rent-A-Car (Enterprise) and that it had been rented to Sheila Brewer, the mother of Cohen's girlfriend. Cohen had been driving the car with her permission. Although the apartment parking lot did not enforce towing until 10:00 p.m., officers arranged for the vehicle to be towed to Enterprise. The officers conducted an inventory search of the vehicle before releasing it to the towing company. In the process, officers identified a firearm in the car's center console. Cohen admitted to the officers that he knew the gun was there. After the inventory search was complete, the towing company returned the car to Enterprise.

The state initially charged Cohen with the offenses of resisting an officer without violence and driving with a suspended license. It then dismissed those charges when the United States Attorney's Office sought a federal indictment against Cohen for being a felon in possession of a firearm. Cohen, having previously been convicted of a felony, was charged by a federal grand jury with one

count of possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Prior to trial, Cohen filed a motion to suppress evidence obtained from the inventory search. Specifically, he contended that the police had no legal basis to impound the car because it was legally parked in an apartment parking lot that had not yet begun to enforce towing. Cohen added that, although the car was rented to Brewer, the police did not seek to contact her so that she could retrieve the vehicle, nor did they contact Cohen's cousin who lived at the apartment where the car was parked. Cohen also argued that, because the police returned the car to Enterprise, the vehicle was not in police custody and there was no legal justification to conduct an inventory search. He attached the towing violation agreement for the apartment complex, which stated that towing would be enforced any time after 10:00 p.m.

The government responded to Cohen's motion by arguing that he lacked standing to contest the search of the vehicle because his license had been suspended and the rental agreement for the vehicle did not authorize him to drive the car. The government further contended that, even if Cohen had standing to challenge the inventory search, the officers complied with the department's towing procedure.

At the suppression hearing, Cohen stipulated that his driver's license was suspended at the time that he was stopped. Brewer testified that she permitted Cohen to borrow the car, but that she was unaware of his suspended license. The government

asserted that the car was entered into police custody even if the impoundment procedure was not strictly followed. This is because, although the car did not go to an impound lot, the police officers on the scene maintained responsibility for the car until it was returned to Enterprise. The district court denied Cohen's motion. Noting that the Eleventh Circuit had yet to rule on whether a defendant has Fourth Amendment standing under these facts, the court considered the opposite holdings of two circuits that had: the Second Circuit in *United States v. Lyle*, 919 F.3d 716 (2d Cir. 2019), and the Eighth Circuit in *United States v. Bettis*, 946 F.3d 1024 (8th Cir. 2020). Ultimately, the district court followed the Second Circuit's reasoning and consequently determined that Cohen did not have standing to challenge the search of the car because he was an unlicensed and unauthorized driver of the rental vehicle. The district court additionally found that, even if Cohen had standing, the inventory search was lawful and reasonable under the circumstances. It found that the officers had the car towed in conformance with department policies and procedures to prevent the car from becoming a nuisance, being stolen or damaged, or becoming illegally parked at the end of the day. The district court further added that there was no evidence that the officers did not act in good faith or acted solely for the purpose of investigation by having the car towed to Enterprise.

During a bench trial, the parties stipulated that, "[i]n preparation for having the car towed, officers searched the car and found a loaded pistol in the glove compartment of the car" after taking

6                          Opinion of the Court                    21-10741

Cohen into custody. The district court found Cohen guilty and sentenced him to 60 months of imprisonment followed by 3 years of supervised release. Cohen timely appealed.

## II.

We apply a mixed standard of review to the district court's ruling on a motion to suppress, reviewing its factual findings for clear error and reviewing de novo its application of the law to those facts. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). Factual findings are construed in the light most favorable to the prevailing party. *Id.* at 1236. We may affirm the denial of a motion to suppress on any ground supported by the record and are not limited to the evidence introduced at the suppression hearing. *United States v. Barron-Soto*, 820 F.3d 409, 415 (11th Cir. 2016); *United States v. Villabona-Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995).

## III.

The district court denied Cohen's motion to suppress on two bases: first, that he lacked standing to contest the search of his vehicle and second, even if he did have standing, the search was a valid inventory search pursuant to an impound consistent with the policies and procedures of the Tampa Police Department. Because the Supreme Court has recognized that "a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search[,]" we will first address whether the district court erred in finding that Cohen lacked

Fourth Amendment standing to challenge the constitutionality of the vehicle search. *See Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).

### A.

To have Fourth Amendment standing to challenge a search, a person must have a reasonable expectation of privacy in the place searched. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). The Supreme Court has explained that "[o]ne of the main rights attaching to property is the right to exclude others," and that, on the whole, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Byrd*, 138 S. Ct. at 1527. However, even if an individual has a subjective expectation of privacy, his possession could be such that "his expectation is not one that society is prepared to recognize as reasonable." *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) (internal quotation marks omitted). For example, "[a] burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.'" *Id.*

In *Byrd*, the Supreme Court held that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." 138 S. Ct. at 1531. Here, the government argues that Cohen lacks Fourth Amendment standing because he was an unauthorized *and unlicensed* driver of a rental car. Because it was unlawful for Cohen to drive at all, the government

contends that he had no reasonable expectation of privacy in the rental vehicle. At oral argument, the government conceded that an unlicensed driver might normally have standing, as might an unauthorized rental car driver. But, says the government, it is the *combination* of being unlicensed and being unauthorized to drive the rental car that deprives Cohen of standing.

We disagree. Under *Byrd*, the fact that Cohen was not listed on the rental agreement does not defeat his reasonable expectation of privacy, so long as he was otherwise in lawful possession and control of the vehicle. *See id.* Like the driver in *Byrd*, Cohen was in sole possession of the rental car and could have excluded third parties, such as carjackers. *See id.* at 1528–29. And there is no indication that Cohen otherwise lacked "lawful possession" of the vehicle. Indeed, the record demonstrates that he had permission from the renter listed on the agreement to drive the vehicle; thus, he did not interfere with the valid possessory interest of the rental car company. *See, e.g., Bettis*, 946 F.3d at 1027 ("[A]n unauthorized driver of a rental car can establish the required expectation of privacy with 'evidence of consent or permission from the lawful owner/renter.'").

It is true that the *Byrd* Court left for the district court on remand to consider whether a driver may nonetheless lack Fourth Amendment standing where he "obtains a vehicle through subterfuge" such as using a strawman to rent the car so that he could engage in illegal activities. 138 S. Ct. at 1530. And the record does contain testimony from Brewer that she was unaware that Cohen's

license was suspended when she consented to his use of the vehicle. But nothing in the record indicates that Cohen obtained the vehicle by misleading Brewer or otherwise using subterfuge to gain permission to use it. It is not for us to determine whether she was wise to allow Cohen to borrow the vehicle without confirming his status of licensure; instead, "[f]or standing purposes, it is typically enough that the driver is operating a vehicle with the permission of the owner." *United States v. Walton,* 763 F.3d 655, 664 (7th Cir. 2014) (alteration adopted and internal quotation mark omitted).

Neither does the fact that Cohen was unlicensed defeat his expectation of privacy. The government urges us to adopt the reasoning put forth by the Second Circuit in *Lyle*, which held that an unauthorized and unlicensed driver of a rental vehicle lacked a reasonable expectation of privacy because his unlicensed status meant his "possession and control of the car was unlawful the moment he started driving it." 919 F.3d at 729. The court thus equated an unlicensed driver to a car thief whose "'wrongful' presence" strips his ability to object to the search of the vehicle. *Id.* But as the Eighth Circuit pointed out, the *Lyle* court's reasoning would equate a large swath of illegal activity—including run-of-the-mill traffic violations—to a "wrongful presence" that eviscerates standing. *See Bettis,* 946 F.3d at 1029 ("[I]f illegally operating a vehicle stripped one's expectation of privacy, common traffic infractions would eviscerate the Fourth Amendment's protections."). For instance, under *Lyle*'s reasoning, a drunk driver with a valid license driving

his own car would no longer have a reasonable expectation of privacy. Nor would a sober driver with a valid license driving her own car whose license expired one day ago without her realizing. We decline to paint Fourth Amendment standing with such a broad brush.

It is true that there are appreciable differences between such routine traffic violations and driving without a license—the offense with which *Lyle* was concerned. *See Lyle,* 919 F.3d at 729. After all, the Second Circuit equated the unlicensed and unauthorized driver to a car thief with a "wrongful presence" in a stolen car *because* both individuals' offenses made their "possession and control of the car . . . unlawful the moment [they] started driving it." *See id.* But at the least, such reasoning, taken to its logical extension, threatens to eviscerate standing for those engaged in similarly continuous unlawful activity. To be sure, it may reasonably be read to exclude individuals whom the Supreme Court has long held to have Fourth Amendment standing. *See, e.g., Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (analyzing the merits of a Fourth Amendment claim of a driver who was stopped for having an expired license plate); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (examining the merits of a Fourth Amendment challenge when an officer stops a car on suspicion that the car is unregistered).[1] It *would* strip standing for

---

[1] As noted by the *Byrd* Court, the government acknowledged that the use of a handheld phone while operating a vehicle, while illegal in at least some jurisdictions, would not strip the driver of his expectation of privacy. 138 S. Ct. at 1529.

countless offenders whose infractions of certain traffic laws may likewise render the operation of their vehicle unlawful from "the moment [they] start driving," *Lyle*, 919 F.3d at 729, including: driving under the influence, driving with excessively tinted windows, driving with an obscured license plate, driving with an expired license plate, driving without insurance, and driving with a broken taillight. But these examples are not comparable to the sort of wrongful presence that the Supreme Court has said may eviscerate standing. Neither is the offense of driving without a license, without more, comparable to that sort of wrongful presence. We thus agree with the Eighth Circuit that the proper question is whether the defendant's illegal conduct has the *same effect* as a defendant's "wrongful presence." *Bettis*, 946 F.3d at 1029 (internal quotation marks omitted).

As *Bettis* discussed, the common theme in the Supreme Court's examples of individuals whose activities equate to a wrongful presence—a burglar plying his trade or a car thief—is that their conduct "interferes with another's valid property interest." *Id.* That is not true of drivers who commit common traffic violations, nor is it true of Cohen. His unlicensed driving did not interfere with the authorized renter's valid possessory interest because he had the renter's permission to use the vehicle. We therefore find that Cohen has Fourth Amendment standing to challenge the Tampa Police Department's search of his vehicle.

B.

Having concluded that Cohen maintained a reasonable expectation of privacy in the rental car such that he had standing under the Fourth Amendment, we address his objection to the search on the merits. Cohen argues that the Tampa Police Department's search of his vehicle was invalid because it did not impound his vehicle in accordance with either of the Department's two impoundment processes outlined in its procedures: police impoundments or rotation impoundments. As defined in the Department's procedures, a "rotation impound" means that a vehicle is taken to a wrecker company storage lot. A "police impound" means the vehicle is taken to a police impound lot. Cohen argues that having the car towed to Enterprise was not in accordance with either procedure. Cohen further argues that the district court erred in making the factual finding that the inventory search was reasonable and followed Tampa Police Department procedures. Instead, so Cohen argues, it could not have made this finding because it received no evidence at the suppression hearing, save a copy of the Department's standard operating procedures, that the police executed a valid impound pursuant to its procedures.

"[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . ." *Cooper v. California*, 386 U.S. 58, 59 (1967). And under the Fourth Amendment, the police generally must have a valid warrant to conduct a search; however, we recognize as an exception to the warrant requirement "an inventory

search of an arrestee's personal property to itemize its contents pursuant to standard inventory procedures." *United States v. Wilson*, 979 F.3d 889, 910 (11th Cir. 2020). Thus, a warrant is not needed to search an impounded car if the officers have the authority to impound the car and follow department procedures governing inventory searches. *United States v. Isaac*, 987 F.3d 980, 988 (11th Cir. 2021). "An officer has the authority to impound a car if his decision to impound it is 'in good faith, based upon standard criteria, and not solely based upon suspicion of evidence of criminal activity.'" *Id.* at 988–89. It is the government's burden to demonstrate that the requirements of this exception were met. *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992).

Here, although the Tampa Police Department's policy provides that a vehicle will "generally" be rotation impounded or police impounded, it does not state that officers are unable to do any other type of impound. The section of the policy entitled "Vehicle Impound Policy" states that, as a general matter, "[p]roper disposition [of the vehicle] depends on the nature of the law enforcement interest in the vehicle and the circumstances of each individual situation." It also provides that, unless compelling exigent circumstances exist, "officers are not authorized to operate private vehicles and not authorized to leave private vehicles on private property without express permission of the property owner." Officers must "tak[e] reasonable precautions to protect vehicles and the contents thereof from damage or theft when the vehicle owner is unable to do so for any reason." There is no indication that the

Tampa Police Department did not follow these procedures. As such, we find that the district court did not clearly err in its factual findings or in denying Cohen's motion to suppress.

## IV.

We hold that Cohen's conduct of operating a rental vehicle without a license and without authorization from the rental company, without more, did not defeat his reasonable expectation of privacy giving rise to Fourth Amendment standing to challenge the search. However, on the merits, the district court did not err in finding that the Tampa Police Department performed a permissible impound and inventory of Cohen's vehicle because the record supports that it was conducted in accordance with the Department's standard operating procedures.

**AFFIRMED.**