[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12504

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TORRIEO MONTE JOHNSON,
a.k.a. Torrieo Corker,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:20-cr-00009-HL-TQL-1

_____

Before BRANCH, BRASHER, AND ABUDU, Circuit Judges.

PER CURIAM:

While patrolling one evening, Officer John Meredith encountered a Honda with a suspended registration improperly stopped in the middle of the street. Meredith lost sight of the Honda but radioed other officers to help locate the vehicle, noting two violations of Georgia law. After the Honda was found in a driveway, Meredith approached the vehicle and the driver, Torrieo Monte Johnson, who was standing outside the car. Smelling marijuana, Meredith searched the car and found three guns.

A federal grand jury indicted Johnson for two counts related to gun possession. Johnson moved to suppress all evidence obtained from the search of his vehicle. The district court denied his motion. Johnson then pleaded guilty.

On appeal, Johnson challenges the district court's denial of his pretrial motion to suppress the three guns. He argues that the stop that preceded the search was not supported by reasonable suspicion and thus in violation of the Fourth Amendment. Because we conclude that the stop was justified at its inception, the district court did not err. We thus affirm the district court's decision.

## I.    Background

Officer Meredith, while patrolling one summer evening in Thomasville, Georgia, came across a Honda that was stopped

facing against traffic in the middle of a two-way street.[1]  Meredith saw a known narcotics trafficker approach the car, and he testified that he believed he saw a hand-to-hand drug deal.

To avoid hitting the Honda, Meredith crossed into the opposite, oncoming lane of traffic.  As he did so, he made eye contact with both occupants of the car—Johnson, who was the driver, and his passenger.  Meredith drove ahead to turn his patrol car around.  In the process, he managed to identify the Honda's license plate information and run it through his in-car computer. The search showed that the Honda's registration was suspended.

After completing a three-point turn further down the road and returning to the scene, Meredith lost sight of the Honda. Noting two violations of Georgia law—(1) improperly stopping a car in the middle of the street, and (2) operating a vehicle with a suspended registration—Meredith radioed to other officers, requesting help locating the Honda.

Soon, another officer relayed that the car was parked in a driveway.  Together, that officer and Meredith approached the car and its occupants, who now stood outside the vehicle.  Meredith "could immediately smell the odor of marijuana coming from the [Honda]."  He told Johnson and the passenger about the suspected

---

[1] The facts recounted here are drawn from the suppression hearing and presented in the light most favorable to the government as the prevailing party in the district court.  *See United States v. Cohen*, 38 F.4th 1364, 1368 (11th Cir. 2022) (explaining the standard for reviewing a district court's ruling on a motion to suppress).

violations of Georgia law and the smell of marijuana.  Meredith then searched the vehicle and found three guns.[2]

A federal grand jury indicted Johnson for two counts: (1) possession of guns while a felon in violation of 18 U.S.C. § 922(g)(1); and (2) possession of a stolen firearm in violation of 18 U.S.C. § 922(j).  The government ultimately dismissed the second count.  Johnson moved to suppress all evidence obtained from his detention and the search of his vehicle and requested an evidentiary hearing.

At the suppression hearing, Johnson argued that the guns should be suppressed because Officer Meredith lacked probable cause to stop and seize him, violating his Fourth Amendment Rights.[3]  The government responded that Meredith had probable cause because he "believe[d] two traffic violations had been committed" when he stopped Johnson—(1) improperly parking in the middle of the road,[4] and (2) operating a vehicle with a

---

[2] The officers did not find any marijuana in the car.

[3] During the suppression hearing, Johnson further argued that the officers exceeded the scope of an investigatory detention.  Because Johnson does not make this argument on appeal—he solely argues that the officers lacked reasonable suspicion to initiate the stop—we need not address it.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

[4] At the suppression hearing and in its briefing below, the government cited O.C.G.A. § 40-6-203, which makes it unlawful to stop a car in front of a public or private driveway.  O.C.G.A § 40-6-203(a)(2)(A) (stating it is illegal to "[s]tand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge a passenger or passengers . . . [in] front of a public or private driveway" unless it is necessary to do so "to avoid conflict with other traffic,

suspended registration.[5]    The government also asserted that Meredith had reasonable suspicion "to suspect Mr. Johnson . . . was conducting a hand-to-hand [drug] deal." At the end of the hearing, the district court denied Johnson's motion to suppress.

Johnson then pleaded guilty to violating § 922(g)(1) without a written agreement, intending to appeal the denial of his motion. The district court sentenced him to 260 months in prison, followed by five years of supervised release.

Johnson appealed. He asks this Court "to reverse the district court's decision and remand the case so he may withdraw his plea."

---

or in compliance with law or the directions of a police officer or official traffic-control device[.]"). On appeal, the government argues that Johnson violated Section 40-6-200(a)—not Section 40-6-203—when he stopped in the middle of the road. Section 40-6-200(a) requires that "every vehicle stopped or parked upon a two-way roadway shall be stopped or parked with the right-hand wheels parallel to and within 12 inches of the right-hand curb or as close as practicable to the right edge of the right-hand shoulder." *Id.* § 40-6-200(a). Because we ultimately determine that Meredith had reasonable suspicion to stop Johnson based on the second perceived violation of Georgia traffic laws—operating an unregistered vehicle—we do not address whether there was reasonable suspicion for violation of Section 40-6-203 or 40-6-200(a).

[5] Georgia law makes it unlawful to "knowingly drive[]" a car with a suspended registration. O.C.G.A. § 40-6-15(a) ("Any person who knowingly drives a motor vehicle on any public road or highway. . . at a time when the vehicle registration of such vehicle is suspended[]. . . shall be guilty of a misdemeanor.").

## II.    Standard of Review

When reviewing the denial of a motion to suppress, "[w]e apply a mixed standard of review . . . , reviewing [the district court's] factual findings for clear error and reviewing *de novo* its application of the law to those facts." *Cohen*, 38 F.4th at 1368 (emphasis added). "Factual findings are construed in the light most favorable to the prevailing party." *Id.*

## III.    Discussion

Johnson argues that the district court improperly denied his motion to suppress because Meredith "lacked the reasonable suspicion . . . necessary to justify a stop." We agree with the government that Meredith had reasonable suspicion to justify the stop because he believed Johnson violated Georgia traffic laws. Because discovery of the guns was supported by a reasonable suspicion, the district court properly denied Johnson's motion to suppress.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. If an officer obtains evidence in violation of the Fourth Amendment, "including the direct products of police misconduct and evidence derived from the illegal conduct, or 'fruit of the poisonous tree,'" that evidence "cannot be used in a criminal trial against the victim of the illegal search and seizure." *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

We note that Johnson and the government characterize Meredith's seizure of Johnson differently. Johnson calls his detention a "traffic stop," while the government labels it a "*Terry* stop."[6] Regardless of the encounter's characterization, our analytical framework is the same. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (explaining that "a routine traffic stop is 'more analogous to a so-called "*Terry* stop" . . . than to a formal arrest.'"). A police officer may lawfully detain an individual in a traffic stop or *Terry* stop if they have "reasonable suspicion" to believe criminal activity occurred or will occur. *See United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc) (stating an officer must have "reasonable suspicion" to conduct a traffic stop); *Gibbs*, 917 F.3d at 1294 (explaining the "reasonable suspicion" standard for a *Terry* stop).

To establish reasonable suspicion, there must be "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (quotations omitted). Courts "must look at the totality of the circumstances of each case" to determine whether the officer had a "particularized and objective basis for suspecting legal

---

[6] A traffic stop generally occurs "when a law enforcement officer stops a vehicle travelling on the roadways, pulls the car over, and may direct the driver and any passenger to exit the car." *United States v. Gibbs*, 917 F.3d 1289, 1296 (11th Cir. 2019). A *Terry* stop is "a brief, investigatory stop" that occurs "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

wrongdoing." *Id.* (quotations omitted). "The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a stop. *Id.* (quotations omitted). "Even minor traffic violations qualify as criminal activity" to provide an officer with reasonable suspicion to make a stop. *Campbell*, 26 F.4th at 880.

So the question becomes: did Johnson's actions "create[] reasonable suspicion that a traffic violation . . . occurred[]"? *Id.* If the answer is yes, the stop "was justified at its inception[.]" *Gibbs*, 917 F.3d at 1294.

We begin by considering whether Johnson's actions in driving an unregistered vehicle qualified as criminal activity for which Meredith could make a traffic stop with reasonable suspicion. O.C.G.A § 40-6-15(a) provides that it is unlawful for a person to drive a vehicle when its registration is suspended. O.C.G.A. § 40-6-15(a). Meredith testified that a search of the Honda's license plate showed that the car's registration was suspended. This fact alone provided Meredith with reasonable suspicion to believe Johnson violated Georgia law by driving the Honda. *Campbell*, 26 F.4th at 880.

Johnson disagrees, arguing that Meredith needed to show that Johnson knew the Honda's registration was suspended. [**Id. at 12, 16–17.**] But Johnson's argument is unavailing. True, the Georgia statute says that a crime is committed when a person "*knowingly* drives a motor vehicle" with a suspended registration. O.C.G.A. § 40-6-15(a) (emphasis added). But as the government

argues, reasonable suspicion does not require that an officer have proof of every element of a suspected crime to conduct an investigative detention. We have explained that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (quoting *Adams v. Williams,* 407 U.S. 143, 149 (1972)). It follows that reasonable suspicion, as "a less demanding standard[,]" does not either. *Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause[.]"). This is also true of *mens rea* elements of perceived crimes. *Jordan v. Mosley*, 487 F.3d 1350, 1355–56 (11th Cir. 2007) ("[A]n arresting officer does not need evidence of the intent for probable cause to arrest to exist."); *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983) ("While intent is an element of the crime which must be proved at trial, it is not necessary in order to establish probable cause to arrest."). Thus, to have reasonable suspicion allowing him to stop Johnson, Meredith was not required to have specific proof of every element of O.C.G.A. § 40-6-15(a), including whether Johnson "knew" of the suspended registration.[7] Meredith's knowledge of the suspended registration was enough.

---

[7] Johnson also argues that Meredith did not know who drove the car, suggesting he did not establish who violated the law. But Meredith testified that he made eye contact with both occupants of the Honda as he drove past it and identified Johnson as the driver.

Johnson's argument fails for another reason. Knowingly driving a car with a suspended registration is a general intent crime. *See United States v. Bailey*, 444 U.S. 394, 405 (1980) ("'[K]nowledge' corresponds loosely with the concept of general intent."). And we have said that "in Georgia, a person can be convicted for a general intent offense without direct evidence of intent because 'general intent may be inferred from the conduct of the accused.'" *Mosley*, 487 F.3d at 1356 n.6 (quotations omitted). So the government "can indirectly prove the requisite 'intent' by proving that the accused did the pertinent act." *Id*. In sum, the fact that Meredith saw the Honda on the road with a suspended registration was enough to provide Meredith with reasonable suspicion to institute a stop.

On top of arguing that Johnson violated Georgia law by driving an unregistered vehicle, the government also pointed to specific articulable facts that supported Meredith's belief that other criminal activity had occurred. *See Yuknavich*, 419 F.3d at 1311. Meredith saw a known narcotics trafficker approach Johnson's car and testified that he believed he saw a hand-to-hand drug deal. These facts also provided Meredith with reasonable suspicion to stop the Honda because there was "a sufficiently high probability that criminal conduct [was] occurring to make the intrusion on the individual's privacy interest reasonable." *See id.*; *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (stating it is reasonable to detain a driver when there is "articulable and reasonable suspicion . . . that [a vehicle's] occupant is . . . subject to seizure for violation of law").

Because we conclude that Meredith had reasonable suspicion that Johnson violated Georgia law by driving a vehicle with a suspended registration and engaging in a hand-to-hand drug deal, we need not address whether Meredith also had reasonable suspicion that Johnson violated Georgia law by stopping the Honda in the middle of the road.

## IV.    Conclusion

Meredith's stop of Johnson's vehicle was justified at its inception because it was based on reasonable suspicion. Thus, the stop did not violate the Fourth Amendment and did not taint the subsequent search of Johnson's vehicle that revealed the firearms. *See Gibbs*, 917 F.3d at 1294; *Wong Sun v. United States*, 371 U.S. 471, 487–48 (1963). We therefore conclude that the district court did not err in denying Johnson's motion to suppress. Accordingly, we affirm.

**AFFIRMED.**