[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12352

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DAVID BRIAN LARCHE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cr-00228-KD-B-1

_____

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

David Brian Larche, Jr., appeals his convictions for possessing with intent to distribute methamphetamine and for possessing a firearm in furtherance of a drug trafficking crime. He argues that the district court erred in denying his motion to suppress evidence. After careful consideration, we affirm.

## I.

Narcotics officers with the Mobile County Sheriff's Office investigated Larche for distributing methamphetamine. They learned from a confidential informant that he kept his supply of drugs in a safe and never went anywhere without the safe.

Members of the narcotics team participating in the investigation asked Glenn Gazzier, an officer in the K-9 unit, for assistance in surveilling Larche. They told Gazzier that Larche was being surveilled for suspected narcotics activity and directed him to be on the lookout for Larche driving a "jacked-up single-cab black Chevy pickup truck" with spray-painted sides. Doc. 161 at 12.[1] And they told Gazzier that Larche had an outstanding warrant for his arrest and also that his truck had a "switched tag," meaning a license plate that belonged to another vehicle.

---

[1] "Doc." numbers refer to the district court's docket entries.

Before beginning surveillance, Gazzier searched the National Crime Information Center database and confirmed that Larche had an outstanding arrest warrant for driving with a suspended license. He also reviewed Larche's picture.

While performing surveillance, Gazzier spotted a truck that matched the description of Larche's vehicle pulling into a gas station. After confirming that the driver appeared to be Larche, Gazzier initiated a stop. At the time of the stop, a passenger was riding in the truck.

As Gazzier approached the driver's side of the truck, Larche exited. Gazzier placed him under arrest pursuant to the arrest warrant. When Gazzier patted down Larche, he found a black Crown Royal bag in Larche's pants pocket. Inside the bag was more than $5,000 in cash. Other officers on the scene then took Larche aside for an interview.

Gazzier returned to Larche's truck. He had his trained and certified drug-detection dog, Lemmy, conduct an open-air sniff of the truck. Lemmy alerted for the presence of narcotics inside the vehicle. It took a "few minutes" for Lemmy to perform the open-air sniff. *Id.* at 27.

In addition, Gazzier ran the truck's license plate through a law enforcement database. The search showed that the license plate belonged to a different vehicle. Gazzier then issued Larche a citation for switching the tag on the vehicle.

Gazzier and other officers searched the truck. They found three guns inside the truck. They also uncovered a safe hidden

inside a gym bag. Ultimately, the officers had the truck towed. They later obtained a search warrant to open the safe and found approximately 100 grams of methamphetamine.

A grand jury indicted Larche, charging him with, among other crimes, one count of possession with intent to distribute more than 50 grams of methamphetamine and possessing a firearm in furtherance of a drug trafficking crime. Larche initially pled not guilty.

Larche filed a motion to suppress, arguing that his Fourth Amendment rights were violated during the stop. He asserted that the initial stop was pretextual and that the officers lacked any basis to search the vehicle. The government opposed the motion to suppress.

The district court held a hearing on the motion to suppress. At the hearing, Larche's attorney explained that Larche had wanted him to gather evidence from the officers' body cameras and vehicle cameras to show that the stop was pretextual, but the attorney had recently learned that no such videos existed. Larche's attorney then asked to withdraw the motion to suppress.

The court permitted Larche to withdraw the motion. It briefly addressed Larche's theory that the stop was pretextual and thus unlawful, stating, "[i]n a Fourth Amendment analysis, it doesn't matter if it was pretext." Doc. 154 at 3. The court explained that the officers could legitimately stop Larche because they had a warrant for his arrest and had probable cause to believe that he was driving a vehicle with a switched tag in violation of Alabama law.

A few months later, Larche, through new counsel, filed a second motion to suppress, again arguing that his constitutional rights were violated during the stop.[2] The government opposed the motion.

The district court held a hearing on the second motion to suppress. The only witness to testify at the hearing was Gazzier, who described what occurred during the stop. At the conclusion of the hearing, the district court denied the second motion to suppress, concluding there was no Fourth Amendment violation. It explained that Gazzier had the authority to stop Larche and arrest him based on the outstanding warrant. The court further concluded that Gazzier had probable cause to search the vehicle based on Lemmy alerting to drugs in the car.

After the district court denied the motion to suppress, Larche entered into a written agreement to plead guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine and one count of possession of a firearm in furtherance of a drug trafficking crime. As part of the plea agreement, Larche waived his right to file "any direct appeal or any collateral attack" subject to certain limited exceptions. Doc. 124 at 12. He reserved the right to bring an appeal "challeng[ing] the Fourth Amendment validity of the stop that formed the basis of his arrest

---

[2] After the motion-to-suppress hearing, Larche's appointed attorney filed a motion to withdraw, citing a breakdown of the attorney-client relationship. A magistrate judge permitted him to withdraw and appointed replacement counsel to represent Larche.

and that was litigated at the suppression hearing in this case." *Id.* (alterations adopted). The agreement specified that the issues litigated at the hearing included his "contention that the stop was pretextual, and thus, constituted an unlawful seizure." *Id.* (alterations adopted). The agreement warned that "these are the only issue[s]" that Larche reserved the right to appeal. *Id.* (alterations adopted).

The district court ultimately accepted Larche's guilty plea. It imposed a total sentence of 180 months' imprisonment. This is Larche's appeal.

## II.

When we review the denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *United States v. Gibson*, 708 F.3d 1256, 1274 (11th Cir. 2013). We accept the credibility determination of a factfinder unless it is "contrary to the laws of nature" or "so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255–56 (11th Cir. 2015) (internal quotation marks omitted).

## III.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Evidence obtained in an encounter with police that violated the Fourth Amendment generally cannot be used against a defendant in a criminal trial. *See United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

21-12352                Opinion of the Court                7

On appeal, Larche does not dispute that Gazzier had reasonable suspicion to stop his vehicle. He also does not dispute that Gazzier had probable cause, based on the outstanding warrant, to arrest him. He nevertheless argues that a Fourth Amendment violation occurred when Gazzier unlawfully prolonged the seizure of his vehicle to conduct the dog sniff.[3]

Even when an officer had a lawful basis for an initial stop, a Fourth Amendment violation occurs if the officer "diverts from the stop's purpose and adds time to the stop in order to investigate other crimes" without reasonable suspicion. *United States v. Campbell*, 26 F.4th 860, 884 (11th Cir. 2022) (en banc). For purposes of this appeal, we assume that Gazzier prolonged the seizure of the vehicle when he conducted the dog sniff. *See Rodriguez v. United States*, 575 U.S. 348, 357 (2015) (recognizing that a dog sniff must be supported by reasonable suspicion when it "adds time to . . . the stop" (internal quotation marks omitted)). We nevertheless conclude that the continued seizure of the vehicle for the time it took to complete the dog sniff was lawful because it was supported by reasonable suspicion.

When deciding whether reasonable suspicion existed, we "look at the totality of the circumstances . . . to see whether the . . . officer [had] a particularized and objective basis for suspecting legal

---

[3] The government argues that we should review this issue for plain error because Larche did not raise it below. We need not resolve whether plain error review applies because, even assuming that Larche adequately raised this issue below, he is not entitled to relief.

wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted); *see Whren v. United States*, 517 U.S. 806, 813 (1996) (explaining that officer's subjective motivations are immaterial). The reasonable-suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence" and is "obviously less demanding" than the probable-cause standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). It does not require officers to observe a crime being committed and instead "may be formed by observing exclusively legal activity." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (internal quotation marks omitted). But "an inchoate and unparticularized suspicion or hunch of criminal activity does not satisfy the reasonable suspicion standard." *United States v. Braddy*, 11 F.4th 1298, 1311 (11th Cir. 2021) (internal quotation marks omitted).

After looking at the totality of the circumstances in this case, we conclude that Gazzier had reasonable suspicion to believe that there was contraband inside the truck. At the time of the stop, he knew that Larche was operating the truck with a license plate that did not belong to the vehicle. And from the pat down he discovered that Larche was carrying over $5,000 in cash. These facts taken together were sufficient to give rise to reasonable suspicion that the truck was being used for criminal activity and supported extending the detention of the truck for a short period of time to conduct the dog sniff. *See Holt*, 777 F.3d at 1256 ("Once an officer develops reasonable suspicion, he has a duty to investigate more.").

On appeal, Larche argues that the fact that he was carrying a large amount of cash did not create a reasonable suspicion that the truck was being used for criminal activity. But Larche frames the issue too narrowly. We are not saying that Gazzier had reasonable suspicion simply because Larche was carrying a large amount of cash. Instead, we conclude that this fact together with the fact that Larche was driving a truck with a switched license plate, which could suggest he was trying to hide that the truck belonged to him, was sufficient to give rise to reasonable suspicion. We thus conclude that no constitutional violation occurred when the seizure of the vehicle continued while Gazzier conducted the dog sniff.

We also conclude that no Fourth Amendment violation occurred when officers searched the truck. After Gazzier conducted the dog sniff and Lemmy alerted to contraband in the vehicle, the officers had probable cause to search the vehicle. *See United States v. Tamari*, 454 F.3d 1259, 1264–65 (11th Cir. 2006) (recognizing that probable cause existed when credentialed drug detection dog

10                    Opinion of the Court                    21-12352

alerted to vehicle).[4] Accordingly, we affirm the district court's denial of the motion to suppress.[5]

   **AFFIRMED.**

---

[4] At the suppression hearing, the government argued that regardless of whether there was probable cause to search the truck, officers could search it as part of an inventory search because they were having it towed. There is indeed an exception to the Fourth Amendment's warrant requirement when police conduct "an inventory search of an arrestee's personal property to itemize its contents pursuant to standard inventory procedures." *United States v. Cohen*, 38 F.4th 1364, 1371 (11th Cir. 2022) (internal quotation marks omitted). Under the inventory-search exception, officers may search an impounded car when they "have the authority to impound the car and follow department procedures governing inventory searches." *Id.* Because we conclude that Gazzier had reasonable suspicion to prolong the seizure of the vehicle while Lemmy conducted an open-air sniff and Lemmy's alert created probable cause to search the vehicle, we do not address whether the government carried its burden to establish that the inventory-search exception to the warrant requirement applied.

[5] The government moved to dismiss the appeal based on the plea agreement's appeal waiver. We previously carried the government's motion with the case. Given our conclusion that the district court did not err in denying the motion to suppress, we do not decide the appeal-waiver issue. Accordingly, the government's motion to dismiss is DENIED as moot.