**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11427

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOHN WAYNE THOMAS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00040-TKW-1

_____

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court erred in denying a motion to suppress evidence seized from a car. Officer Anthony Kaiser approached John Thomas's car after

receiving a complaint about littering. When Kaiser later asked for identification, Thomas produced a fake driver's license. Kaiser then attempted to arrest him, but Thomas pepper-sprayed Kaiser and fled. After Thomas left his car in a nearby neighborhood, officers obtained a search warrant for it. Based on the evidence found in the car, a grand jury indicted Thomas for unlawful possession of a means of identification, fraudulent use of 15 or more unauthorized access devices, mail theft, and possession with intent to distribute methamphetamine. The district court denied Thomas's motion to suppress the evidence found during the execution of the search warrant. We affirm.

## I.  BACKGROUND

On January 31, 2023, a McDonald's employee in DeFuniak Springs, Florida, called the police to report that a male in a gray Acura car littered in the restaurant's parking lot. Officer Anthony Kaiser went to the scene in response to that report. When he arrived, Kaiser saw a parked car matching the employee's description and trash on the ground next to the driver's side door. Kaiser asked his dispatcher to check the Louisiana license plate on the car.

Officer Kaiser parked his police car and approached the driver's side door. Kaiser informed the man in the driver's seat, John Thomas, of the complaint. Thomas admitted that he had discarded the trash. He exited the car and picked up the trash and then returned to the driver's seat and closed the car door.

After Kaiser asked Thomas for identification, Thomas produced a Louisiana driver's license for a person born in 1947 with a

different name. Kaiser suspected the identification was false because Thomas did not appear to be in his mid-70s.

At that point, Kaiser stepped away from the driver's side door and read Thomas's license plate again to the dispatcher, as well as his driver's license number. Kaiser then reapproached the driver's door. While Kaiser and Thomas spoke, the dispatcher reported back that the driver's license number did not belong to someone named S.M.D.

A few minutes later, a female passenger from Thomas's car, Amanda Breaux, approached Kaiser, who was still standing by the driver's side door of Thomas's car. Kaiser and Breaux then walked over to a different parking spot and had a conversation. During their conversation, Kaiser began to suspect Breaux was engaged in criminal activity, so he ordered her to follow him over to his police car, a few more spots away. While Kaiser and Breaux were talking, Thomas again exited his car, walked to an adjacent parking lot, and returned a minute later.

During Breaux and Kaiser's conversation, the dispatcher confirmed that the driver's license number was associated with a different name and birth date than was displayed on it. Kaiser then left Breaux by the police car, walked to Thomas's car, opened the door, grabbed Thomas, and told him to "come on out." Thomas did not immediately exit the car, and Kaiser told him that he was putting him in handcuffs. Kaiser informed Thomas that he was being detained for giving false identification.

After Thomas continued to refuse to exit his car, Kaiser went back to his police car to retrieve a taser. Thomas closed his door but left the driver's side window slightly open. Kaiser approached his car with his taser. Thomas pepper-sprayed Kaiser through the crack, and Kaiser deployed his taser. Thomas quickly backed out of the space, and Kaiser fired two shots at Thomas's car. Thomas successfully fled the parking lot and left his car in a nearby neighborhood. A canine tracking unit found Thomas a few hours later with several cans of pepper spray on his person.

An investigator later filed an affidavit to support a search warrant for the contents of Thomas's gray Acura. The affidavit recounted that "Thomas provided Officer . . . Kaiser with a fake Louisiana driver's license" with "fake information." And it stated that after Kaiser "informed . . . Thomas he was under arrest," Thomas "failed to follow verbal commands" and "sprayed Officer . . . Kaiser in the face with mace." Thomas himself "admitted he 'maced' . . . Kaiser because . . . Kaiser had a taser and he did not feel . . . Kaiser was being respectful." The affidavit recounted that "Brea[u]x was subsequently detained and told law enforcement . . . Thomas had a firearm in his possession." Police sought the warrant to obtain "[f]irearms and ammunition, pepper spray or mace . . . , spent projectiles, . . . [and] documents to include false identification." The affidavit provided that these objects were evidence of battery on a law enforcement officer and of giving false identification by a person lawfully detained. The circuit judge issued the search warrant.

24-11427              Opinion of the Court                5

When officers executed the warrant, they found approximately 105 grams of methamphetamine, two counterfeit $100 bills, and personal identification documents of other people including wage records, mail, copies of social security cards, birth certificates, account statements, and tax documents. Officers also found a laptop containing pictures of social security cards, drivers' licenses, credit cards, checks, birth certificates, and multiple drivers' licenses with Thomas's photograph alongside other people's information.

On May 16, 2023, a grand jury returned an indictment charging Thomas with one count of unlawful possession of a means of identification, 18 U.S.C. § 1028(a)(7), (b)(2)(B); one count of fraudulent use of 15 or more unauthorized access devices, id. § 1029(a)(3), (c)(1)(A)(i); one count of unlawful possession of a means of identification during and in relation to a felony, id. § 1028A(a)(1); one count of mail theft, id. § 1708; and one count of possession with intent to distribute 50 grams or more of a mixture containing methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii). Thomas pleaded not guilty, and the district court scheduled a trial.

Thomas moved to suppress the evidence obtained from the search of his gray Acura on the ground that the warrant was obtained based on information gained during an illegal stop. He argued that Kaiser did not have reasonable suspicion of underlying unlawful activity. Specifically, he argued that Florida law does not allow an officer to detain a person on reasonable suspicion of non-criminal violations, such as littering. He also argued that the search warrant was defective because he was detained unlawfully.

The government responded that Kaiser had the necessary "information for an investigatory stop," and in any event, Thomas did not believe he was being detained. It also responded that because Thomas had given Kaiser false identification while "seated in the vehicle" and deployed pepper spray from the vehicle, there was probable cause that evidence of crimes existed in the vehicle.

The district court denied the motion to suppress. It ruled that Kaiser had the "authority to lawfully detain [Thomas] for an investigatory stop based on the littering complaint." During that lawful stop, Kaiser had the authority to ask for Thomas's identification, and Thomas was obliged to provide it. The district court reasoned that even if Thomas "picked up the trash," Kaiser "was [not] required to terminate his investigation" and could "still cite [Thomas] for littering." The district court also ruled that the police had probable cause to search the car for evidence of criminal activity because Thomas produced false identification during a "lawful detention."

The government dismissed one count of the indictment, and Thomas pleaded guilty to the remaining four counts. But he "reserve[d] the right to appeal the denial of his Motion to Suppress." The district court sentenced him to 212 months of imprisonment and five years of supervised release.

## II. STANDARDS OF REVIEW

When reviewing the denial of a motion to suppress, we review findings of fact for clear error and legal conclusions *de novo*. *United States v. Cohen*, 38 F.4th 1364, 1368 (11th Cir. 2022). We

construe all facts in the light most favorable to the government. *Id.* "[W]e may affirm the denial of a motion to suppress on any ground supported by the record." *United States v. Schmitz*, 153 F.4th 1334, 1340 n.6 (11th Cir. 2025) (citation and internal quotation marks omitted).

## III. DISCUSSION

Thomas appeals only the denial of his motion to suppress. He argues that police obtained the search warrant for his gray Acura "based on information acquired during [an] illegal stop" because he committed a civil infraction, not a crime. The government responds that under Florida law, officers "may detain an individual to issue a citation for littering" and are allowed to request identification to issue the citation. The government argues, in the alternative, that the encounter was initially consensual and matured into a "brief, investigatory detention" when Kaiser instructed Thomas to get out of the car. Kaiser could then detain Thomas.

"Evidence obtained in violation of the Fourth Amendment must be suppressed." *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021) (citation and internal quotation marks omitted). We have recognized "three broad categories of police-citizen encounters for purposes of . . . Fourth Amendment analysis: [] police-citizen exchanges involving no coercion or detention; [] brief seizures or investigatory detentions; and [] full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006).

A consensual encounter between police and a citizen does not implicate the protections of the Fourth Amendment. *United*

*States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021). An encounter is consensual when an officer does not "by means of physical force or show of authority . . . in some way restrain[] the liberty of a citizen." *Id.* (citation and internal quotation marks omitted). "The test for whether the officer restrained a citizen's liberty is whether 'a reasonable person would feel free to terminate the encounter.'" *Id.* (quoting *United States v. Drayton*, 536 U.S. 194, 201 (2002)). The test depends on "[a]ll the circumstances" of the encounter, including "whether a citizen's path is blocked or impeded," "the length of the detention and questioning; the number of police officers present; whether the officers displayed their weapons; any physical touching of the suspect; and the language and tone of voice of the police." *Id.* (alteration adopted) (citation and internal quotation marks omitted). Officers "may pose questions" and "ask for identification" as part of a consensual encounter so long as "they do not induce cooperation by coercive means." *Drayton*, 536 U.S. at 201.

In *Knights*, we affirmed a denial of a motion to suppress where officers approached two individuals suspected of stealing something from a vehicle. 989 F.3d at 1284, 1286. The officers "parked in a way that would have allowed" the individuals to "drive away." *Id.* at 1284. One of the individuals left the scene and walked into a nearby house. *Id.* The defendant sat in the driver's seat and closed the car door. *Id.* An officer approached the car with a flashlight and knocked on the driver's window, and the defendant then opened the door. *Id.* The officer smelled marijuana and asked whether the defendant had any. *Id.* We held that the defendant initially "would have felt free to leave," in part because he "was

physically capable of walking away," "could have driven away," and the other individual "[i]n fact . . . did leave." *Id.* at 1286–87.

In the light of *Knights*, the initial encounter between Kaiser and Thomas was consensual. Kaiser did not block Thomas's car from leaving the parking lot by parking a few spaces away. By Thomas's own telling, Kaiser approached Thomas's window, informed him of the littering complaint, and allowed Thomas to exit the car to throw away the litter. When asked for identification, Thomas voluntarily showed Kaiser his false driver's license. Thomas left the scene after Kaiser stepped away. He exited his car and walked around an adjacent parking lot. And nothing from the video of the incident establishes that Kaiser exhibited "physical force or show of authority" before he told Thomas to step out of the vehicle. *Id.* at 1286 (citation and internal quotation marks omitted). There is no evidence suggesting that Thomas should have felt compelled to produce identification or answer questions, even after Kaiser inquired about the littering. *See id.* at 1284, 1286 (holding that a police encounter was consensual even after police asked the suspect if he had any marijuana).

Thomas argues we cannot conclude that the encounter was consensual because doing so would be "div[ing] into the record to make [our] own factual determinations." But "we may affirm the denial of a motion to suppress on any ground supported by the record." *Schmitz*, 153 F.4th at 1340 n.6 (citation and internal quotation marks omitted). And "when the record contains video evidence, the authenticity of which is not challenged, the court should

ordinarily view the facts in the light depicted by the video evidence." *O'Brien v. Town of Bellingham*, 943 F.3d 514, 531 (1st Cir. 2019) (citation and internal quotation marks omitted); *cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (directing reviewing courts to "view[] the facts in the light depicted by the videotape").

That the initial encounter was consensual does not end the inquiry because, as the parties agree, Kaiser eventually effected a seizure when he ordered Thomas to exit the car. The government maintains that Kaiser only "conduct[ed] a *Terry* stop" at that point. Yet the affiant statement in the search warrant application says that after "Kaiser realized the identification was false, [he] informed . . . Thomas he was under arrest, and directed him to exit the vehicle." And the video establishes that Kaiser told Thomas "come on out" and "you're going in handcuffs" and grabbed Thomas even before he tried to resist.   We agree with Thomas that Kaiser arrested him.

Kaiser arrested Thomas only after he had probable cause to do so. Probable cause for an arrest exists when "at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (alterations adopted) (citation and internal quotation marks omitted). Because "the existence of probable cause is determined by objective standards" and not "on the basis of what [police] officers think," *United States v. Roy*, 869 F.2d 1427, 1433 (11th Cir. 1989), any crime for

which a reasonable policeman would have probable cause will support the arrest. Although the government does not mention the statute, Florida makes it a third-degree felony to "[k]nowingly have . . . possession or to display any . . . forged, stolen, fictitious, counterfeit, or unlawfully issued driver license or identification card." FLA. STAT. § 322.212(1)(a), (6); *see State v. Koczwara*, 837 So. 2d 591, 593 (Fla. Dist. Ct. App. 2003) (noting that section 322.212(1)(a) forbids possession of a "license with a false name"). Kaiser had probable cause to believe Thomas violated that statute. When Kaiser arrested Thomas, he knew that his driver's license displayed a name and birth date not associated with the driver's license number and, based on his "common sense view to the realities of normal life," he surmised that Thomas was not the over-70-year-old man the license described. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998) (citation and internal quotation marks omitted).

Because Thomas was not seized in violation of the Fourth Amendment, he cannot establish that the search warrant was based on information acquired illegally. So the district court did not err by denying Thomas's motion to suppress evidence obtained during the execution of the warrant. We affirm the denial of Thomas's motion to suppress.

## IV. CONCLUSION

We **AFFIRM** Thomas's conviction.