FILED

02/18/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

March 12, 2025 Session

**STATE OF TENNESSEE v. DAVID KEITH GUNN**

**Appeal from the Circuit Court for Maury County**
**No. 29740     David L. Allen, Judge**

_____

**No. M2024-00624-CCA-R3-CD**

_____

A jury convicted the Defendant, David Keith Gunn, of one count of possessing fifteen grams or more of fentanyl for resale, one count of possessing a firearm during the commission of a dangerous felony, one count of being a felon in possession of a firearm, and one count of possessing drug paraphernalia. The Defendant also pleaded guilty to one count of driving on a suspended license with prior convictions. The trial court sentenced the Defendant to an effective term of incarceration of seventeen years for these offenses. In this appeal as of right, the Defendant contends that the trial court committed reversible error by denying his motion to suppress the evidence upon which his trial convictions are based. We find no error and affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JEFFREY USMAN, SP.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

Ryan Wayne Dugger, Columbia, Tennessee, for the appellant, David Keith Gunn.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.

On November 8, 2021, Lieutenant Alex MacPherson, who was then Sergeant MacPherson, was working for the Columbia Police Department as part of its Special

Response Team. In that role, one of his responsibilities was to effectuate outstanding arrest warrants. One of the people he was attempting to locate was the Defendant, David Keith Gunn. To accomplish this end, Lieutenant MacPherson obtained Mr. Gunn's driver's license photograph and information related to his outstanding arrest warrants, reviewed social media posts connected with him, examined his criminal history, and communicated with other law enforcement officers who might have information on where to locate Mr. Gunn. As to the arrest warrants, Lieutenant MacPherson was aware of outstanding arrest warrants in connection with two counts of domestic assault and an aggravated burglary perpetrated at an address on Pawnee Trail.

Driving in an area where he anticipated that Mr. Gunn might be found, Lieutenant MacPherson noticed a vehicle that he believed was being driven by Mr. Gunn. The vehicle type, a Nissan Rogue, matched one that Mr. Gunn was known to drive, and the driver looked like Mr. Gunn. The vehicle had an expired car tag, and Lieutenant MacPherson notified other officers in the area that he was going to conduct a stop on the vehicle. Because the arrest warrants were for felony offenses, Lieutenant MacPherson requested assistance and waited for other officers to arrive before attempting to stop the vehicle.

Lieutenant MacPherson pulled his vehicle behind the Nissan being driven by Mr. Gunn, and upon the arrival of another officer, he activated the blue lights and siren on the marked police vehicle that he was driving. The driver, however, failed to stop and instead turned and continued to drive away from him. Lieutenant MacPherson testified that Mr. Gunn had multiple opportunities to safely pull over and stop. Despite a police siren and lights behind him and opportunities to safely stop, Mr. Gunn continued driving "for several miles" with Lieutenant MacPherson following behind. Eventually, Mr. Gunn pulled into the driveway of a duplex located at 516 Pawnee Trail (the residence). The aggravated burglary for which Mr. Gunn had an outstanding arrest warrant had been committed at this address. Lieutenant MacPherson stopped his patrol car behind the Defendant; Lieutenant MacPherson's vehicle was "partially in the roadway and partially in the driveway."

After Mr. Gunn stopped in the driveway, he opened the driver's door and began to get out of the car. Lieutenant MacPherson approached and took the Defendant into custody, describing the encounter as amicable. Lieutenant MacPherson told Mr. Gunn that he was under arrest, placed him in the back of his patrol car, and advised Mr. Gunn of his *Miranda* rights.[1] Lieutenant MacPherson asked Mr. Gunn where he lived. Mr. Gunn responded that he was homeless. On cross-examination, Lieutenant MacPherson testified that he believed Mr. Gunn when he said he was homeless.

---

[1] *See generally Miranda v. Arizona*, 384 U.S. 436 (1966).

Two other officers had arrived at the scene. Lieutenant MacPherson testified that, after he had placed Mr. Gunn into his patrol car, he "and the other officers went back up to the vehicle so that we could see if there was anything in plain view that we could take action on." Lieutenant MacPherson noticed the odor of marijuana emanating from inside the car. He also noticed cigarillos and a box for a digital scale. He explained that cigarillos were "commonly used to consume the drug of marijuana." Based on these observations, Lieutenant MacPherson concluded that there was probable cause to search the car. Corporal William Mack Hall also testified that, while in the car's vicinity, he smelled marijuana and saw drug paraphernalia in plain view. He assisted in searching the car. During the ensuing search, the officers found in the car a handgun, a digital scale, marijuana residue, approximately an ounce of a blue powder, and six pills. The handgun found in the car was loaded with 29 rounds. The powder and pills were later determined to contain fentanyl.

Ms. Diamond Wilson appeared from the residence. Mr. Gunn is the father of her children. Mr. Gunn asked Ms. Wilson to get him a sweatshirt. Lieutenant MacPherson testified, "Ms. Wilson brought that sweatshirt out of the house and gave it to me so he would have it when he went to jail." Ms. Wilson testified at trial that she and her children lived in the residence with her mother, Jessica Anderson, who was renting the home.[2] According to Ms. Wilson, she and Mr. Gunn had been separated for about three months as of early November 2021. She indicated that Mr. Gunn was not living there as of the date he was arrested and that he did not stay overnight, although he would visit to spend time with his children. She testified that Mr. Gunn had not stayed at the residence on the night prior to his arrest. She also indicated that the vehicle Mr. Gunn was driving was actually her vehicle, though she indicated that Mr. Gunn had permission to use it.

In contrast, Mr. Gunn had testified at the suppression hearing that, on the date of his arrest, he was living at the residence with his children's grandmother, Jessica Anderson. He claimed that he had been "staying there . . . no more than about four to six months" because he had recently moved there from Clarksville. The Defendant admitted that he told Lieutenant MacPherson that he was homeless, stating that he did so "because [he] wasn't on a lease at the time." Mr. Gunn testified during the suppression hearing as to the residence that he "stayed there but not regularly. Like, [his] clothes and stuff were there." Asked where he would call home on the date of his arrest, the Defendant responded, "Nowhere particular." However, he also stated that he stayed there most nights to sleep. Mr. Gunn stated that, in a given week, he would spend "[a]bout four out of . . . seven" nights at the residence. However, Mr. Gunn also stated that he did not recall where he had spent the night prior to the day he was arrested by Lieutenant MacPherson. When asked if

_____

[2] An appellate court may consider testimony presented at trial in reviewing the trial court's conclusions in a motion to suppress evidence. *State v. Riels*, 216 S.W.3d 737, 753 (Tenn. 2007).

he recalled whether he had "stayed at that address on Pawnee Trail, at all, the week prior" to being arrested, the Defendant replied, "No, sir, I didn't." On cross-examination, he admitted that he did not tell Lieutenant MacPherson that he lived at the residence, that he indicated to law enforcement that he was homeless, and that he did not tell law enforcement he had driven "home." He acknowledged that "at the time [he] couldn't stay there and couldn't reside there because [he] had an outstanding warrant for burglarizing that residence."

The Maury County Grand Jury indicted Mr. Gunn for possession of 15 grams or more of fentanyl for resale, possession of a firearm during the commission of a dangerous felony, being a felon in possession of a firearm, possession of drug paraphernalia, and driving on a suspended license with prior convictions. He moved to suppress the results of the warrantless search of the vehicle that he had been driving.

Having heard the evidence presented at the suppression hearing and considered the dueling arguments advanced by the attorneys, the trial court denied Mr. Gunn's motion to suppress. The trial court determined that Mr. Gunn had standing to assert a privacy interest in the vehicle. However, the trial court determined that Mr. Gunn's argument that he should enjoy enhanced privacy protections arising from the vehicle being within the curtilage of the residence was unavailing. The trial court concluded that Mr. Gunn did "not have standing as the curtilage of the home." Three distinct bases underlay this decision. One, the trial court noted that "Mr. Gunn told Lieutenant MacPherson that he was homeless, and I think Lieutenant MacPherson had a right to rely on the Defendant's statements." Two, the trial court noted that Mr. Gunn only got his vehicle into the driveway by driving "for five miles with sirens and blue lights behind him" to get to this spot. Three, the trial court indicated that there was no reasonable expectation of privacy in the driveway because the public had permission to be in the spot where Mr. Gunn stopped his vehicle and where the search occurred. Based on its determination that Mr. Gunn was not entitled to any added privacy protections stemming from his proximity to the residence, the trial court concluded that the search was permissible pursuant to the automobile exception to the warrant requirement based on probable cause arising from the officers' plain view observations.

The matter then proceeded to a jury trial. At trial, Ms. Wilson attempted to assume much of the responsibility, including asserting that the gun that had been recovered by the police was hers. Despite this testimony, the jury convicted the Defendant as charged. Mr. Gunn filed a motion for a new trial, raising among other issues purported error in denying his motion to suppress. The trial court denied his motion for a new trial.

Mr. Gunn appeals from that decision, raising one issue on appeal. He frames that issue as follows: "Did the Court err in denying . . . Mr. Gunn's Motion to Suppress Evidence?"

## II.

Addressing the standard of review, the Tennessee Supreme Court has explained that

[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. [I]n evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial. However, this Court reviews a trial court's application of law to the facts under a de novo standard of review with no presumption of correctness.

*State v. McKinney*, 669 S.W.3d 753, 764 (Tenn. 2023) (citation modified).

## III.

Mr. Gunn asserts that the search was illegal because law enforcement entered into the curtilage of the home without a warrant when searching the vehicle. The trial court concluded that Mr. Gunn does not have standing as to the residence in this case; accordingly, he gains no added privacy protection from having pulled the vehicle into the driveway before being detained by law enforcement. In considering standing for Fourth Amendment purposes, the United States Supreme Court has explained that

[t]he concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits.

*Byrd v. United States*, 584 U.S. 395, 410-11 (2018).

Mr. Gunn disagrees with the trial court's conclusion that he lacks standing as to the residence. Mr. Gunn does not raise an argument under Article I, Section 7 or any other

provision of the Tennessee Constitution and instead relies exclusively upon the Fourth Amendment of the United States Constitution.

There are challenges in fully apprehending the contours of Mr. Gunn's argument for why the trial court's decision was in error under the Fourth Amendment. He develops an argument demonstrating that he has standing as to the vehicle. The trial court, however, found as much, concluding that he has standing as to the vehicle, and the State does not dispute this finding. Mr. Gunn acknowledges the trial court's finding and asserts that "it appears he only needs standing for the vehicle." Mr. Gunn offers no explanation or authority to support this somewhat mysterious conclusory assertion. There is no dispute in this case that Mr. Gunn has a privacy protection in the vehicle — the question is whether he gets the additional added protection of privacy from the residence. It is the residence as to which the trial court concluded that Mr. Gunn has no standing for Fourth Amendment purposes, not the vehicle. Mr. Gunn's argument is ultimately dependent upon the reentry into the driveway being a transgression of the privacy protections of the curtilage of the home. Even assuming for purposes of argument that the entry into the driveway invaded the curtilage of the home, he still needs to have standing with regard to the residence to be able to seek exclusion of the evidence obtained.

While conceding that he told Lieutenant MacPherson that he was homeless when asked where he lived, Mr. Gunn contends that he, nevertheless, has standing as to the residence because Lieutenant MacPherson "did not in fact know whether Mr. Gunn was homeless or not," and Mr. Gunn only stated that he was homeless "because he was not on the lease." Furthermore, Mr. Gunn notes that Lieutenant MacPherson knew that "Mr. Gunn had previously resided" at the residence. Additionally, Mr. Gunn asserts he established a privacy interest in the residence through his testimony that he stayed at the residence "most nights and had his clothes there," that he stayed "three to four nights out the week," that his children lived there, that Ms. Anderson testified that "Mr. Gunn has been staying with her off an[d] on," and that Ms. Wilson had brought him "his hoodie from inside the home after he asked her to get one."

The Fourth Amendment of the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A consistent thread throughout a wide variety of Fourth Amendment matters is that the determination of reasonableness of a search or seizure is

dependent upon the facts known at the time to law enforcement. *See, e.g., Kansas v. Glover*, 589 U.S. 376, 381 (2020) (assessing "whether the facts known to" the law enforcement officer "at the time of the stop gave rise to reasonable suspicion"); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."); *State v. Reynolds*, 504 S.W.3d 283, 302 (Tenn. 2016) (stating that "when determining whether probable cause exists, courts only consider 'the facts and circumstances *within the knowledge of the officers, and of which they had reasonably trustworthy information*' at the time the challenged search or seizure occurred and do not apply 20/20 hindsight when gauging the existence of probable cause") *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008) ("The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the governmental actor at the time of the entry."). The United States Supreme Court has noted that "almost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Scott v. United States*, 436 U.S. 128, 137 (1978). Furthermore, a "defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object" and in standing to contest a search. *State v. Ross*, 49 S.W.3d 833, 842 (Tenn. 2001).

Here, in proceeding to search the vehicle without having obtained a warrant prior to doing so, law enforcement officers operated under the understanding that Mr. Gunn was homeless and was charged with burglarizing the residence, not that he was claiming to be living in the residence whose driveway he pulled into following his failure to stop. The trial court concluded the officers were reasonably entitled to act upon Mr. Gunn's statement that he was homeless.[3] Mr. Gunn insists, however, that law enforcement knew that he had a connection to the residence. Indeed, Lieutenant MacPherson did know of a connection, but the connection was not one that would have indicated that Mr. Gunn had

---

[3] The trial court plainly understood the statement about being homeless as having been made at the scene. Mr. Gunn has raised no objection to this understanding at the suppression hearing, in his motion for a new trial, or in the present appeal. While there is some ambiguity in the record as to precisely when Mr. Gunn indicated that he was homeless, any objection on this basis has been waived and is not appropriately before this court. Even if the statement was not made at the scene, the additional factual circumstances of the case do not indicate any error in the trial court's ultimate conclusion that Mr. Gunn lacked standing to gain privacy protections from the residence.

a privacy interest stemming from the residence. Quite to the contrary, Lieutenant MacPherson was effectuating an outstanding warrant for the arrest of Mr. Gunn for aggravated burglary of the very residence whose curtilage is the basis of his claim to standing. For this offense, entry or remaining on the property must be "without the effective consent of the property owner." Tenn. Code Ann. §§ 39-13-1002 & 39-13-1003.

Unlike an overnight guest, "a 'casual visitor' . . . does not have a reasonable expectation in the host's residence or apartment." *State v. Transou*, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996). Here, the facts known to the officers at the time would not have even indicated to the officers that Mr. Gunn was an invited casual visitor, much less that he was someone who would have qualified for privacy protections associated with the residence. Also, contrary to Mr. Gunn's claim that he was staying at the residence most nights of the week, Ms. Wilson testified that he was not staying overnight and had not been welcome to do so for months. While he claims to the contrary, applying the applicable standard of review, we proceed under an understanding that Ms. Wilson's testimony is accurate on this point and Mr. Gunn's assertion to the contrary is not. *State v. McKinney*, 669 S.W.3d at 764.

Simply stated, from our review of the record in light of the parties' arguments, we find no error in the trial court's conclusion that Mr. Gunn lacked standing as to the residence, thereby preventing him from benefiting from any additional privacy protection that might potentially extend from the house to the driveway. In the absence of that privacy safeguard, Mr. Gunn does not dispute that this case constitutes a straightforward application of the automobile exception to the warrant requirement and that his Fourth Amendment rights were not violated. He concedes as much.

**IV.**

Based on the foregoing reasoning, we affirm the judgments of the trial court.

s/ Jeffrey Usman
JEFFREY USMAN, SPECIAL JUDGE